Michael R. Lozeau (State Bar No. 142893)
Douglas J. Chermak (State Bar No. 233382)
E-mail: michael@lozeaudrury.com
        doug@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205

Arthur Pugsley (State Bar No. 252200)
Melissa Kelly (State Bar No. 300817)
E-mail: arthur@lawaterkeeper.org
        melissa@lawaterkeeper.org
LOS ANGELES WATERKEEPER
120 Broadway, Suite 105
Santa Monica, CA 90401
Tel: (310) 394-6162
Fax: (310) 394-6178

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a non-profit corporation, | Case No. _____ |
| Plaintiff, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES |
| vs. | |
| CITY FIBERS, INC., a corporation, | |
| Defendant. | (Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

COMPLAINT

1

LOS ANGELES WATERKEEPER ("Waterkeeper"), a California non-profit corporation, by and through its counsel, hereby alleges:

## I.   JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act" or "the Act").  This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).  The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on such a declaration); 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief); and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

2.      On May 31, 2017, Plaintiff provided notice of Defendant's violations of the Act, and of Plaintiff's intention to file suit against Defendant, to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region IX; the Executive Director of the State Water Resources Control Board ("State Board"); the Executive Officer of the California Regional Water Quality Control Board, Los Angeles Region ("Regional Board"); and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).  A true and correct copy of Waterkeeper's notice letter is attached as Exhibit A, and is incorporated by reference.

3.      More than sixty days have passed since notice was served on Defendant and the State and federal agencies.  Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint.  This action's claim for civil penalties is not barred by any prior administrative penalty

COMPLAINT

1    under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

2       4.     Venue is proper in the Central District of California pursuant to Section

3    505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is

4    located within this judicial district.

5    **II.**      **INTRODUCTION**

6       5.     This complaint seeks relief for Defendant's discharges of polluted storm

7    water from Defendant's industrial facilities located at the following addresses: 2500 S.

8    Santa Fe Avenue in Los Angeles, California ("Los Angeles Plant"); 3033 East

9    Washington Blvd. in Los Angeles, California ("East Washington Plant"); 2211 East

10   Washington Blvd. in Los Angeles, California ("West Washington Plant"); and 16714

11   Schoenborn Street in North Hills, California ("West Valley Plant"). These discharges

12   are in violation of the Act and National Pollutant Discharge Elimination System

13   ("NPDES") Permit No. CAS000001, State Water Resources Control Board Water

14   Quality Order No. 97-03-DWQ ("1997 Permit"), as renewed by Water Quality Order

15   No. 2014-0057-DWQ ("2015 Permit") (the permits are collectively referred to

16   hereinafter as the "Permit" or "General Permit"). Defendant's violations of the

17   discharge, treatment technology, monitoring requirements, and other procedural and

18   substantive requirements of the Permit and the Act are ongoing and continuous.

19       6.     With every significant rainfall event, millions of gallons of polluted

20   storm water originating from industrial operations, such as those conducted by

21   Defendant, pour into storm drains and local waterways. The consensus among

22   agencies and water quality specialists is that storm water pollution accounts for more

23   than half of the total pollution entering surface waters each year.

24       7.     Los Angeles area waters are ecologically sensitive areas and are essential

25   habitat for dozens of fish and bird species as well as macro-invertebrate and

26   invertebrate species. Storm water and non-storm water contaminated with sediment,

27

28   COMPLAINT

heavy metals, and other pollutants harm the special aesthetic and recreational significance that Los Angeles area waters have for people in the surrounding communities.  The public's use of Los Angeles area waters for water contact sports exposes many people to toxic metals and other contaminants in storm water and non-storm water discharges.  Non-contact recreation and aesthetic opportunities, such as wildlife observation are also impaired by polluted discharges into Los Angeles area waters.

8.     Industrial facilities, like Defendant's, that are discharging polluted storm water and non-storm water contribute to the impairment of downstream waters and aquatic-dependent wildlife.  These contaminated discharges can and must be controlled for the ecosystem to regain its health.

## III.   PARTIES

9.     Plaintiff Waterkeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Santa Monica, California.  Founded in 1993, Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal surface and groundwaters of Los Angeles County from all sources of pollution and degradation.  Waterkeeper and its approximately 3,000 members are deeply concerned with protecting the environment in and around their communities, including the Los Angeles River Watershed.  To further these goals, Waterkeeper actively seeks federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

10.     Waterkeeper has members living in the communities adjacent to the Los Angeles Plant, the East Washington Plant, the West Washington Plant, the West Valley Plant, and the Los Angeles River Watershed.  They enjoy using the Los Angeles River and Bull Creek for recreation and other activities.  Members of Waterkeeper use and

COMPLAINT

enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged.  Members of Waterkeeper use those areas to recreate and view wildlife, among other activities.  Defendant's discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments.  Thus, the interests of Waterkeeper's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act and the Permit.  The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities.

11.   Waterkeeper brings this action on behalf of its members.  Waterkeeper's interest in reducing Defendant's discharges of pollutants into the Los Angeles River and its tributaries and requiring Defendant to comply with the requirements of the General Permit are germane to its purposes.  Litigation of the claims asserted and relief requested in this Complaint does not require the participation in this lawsuit of individual members of Waterkeeper.

12.   Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and one or more of its members, for which harm they have no plain, speedy or adequate remedy at law.

13.   Defendant CITY FIBERS, INC. ("City Fibers") is a corporation that owns and/or operates the Los Angeles Plant, the East Washington Plant, the West Washington Plant, and the West Valley Plant.

## IV.   STATUTORY BACKGROUND

### Clean Water Act

14.   Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES

COMPLAINT

5

permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

15.     Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program.  33 U.S.C. § 1342(p).  States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(p).

16.     The EPA promulgated regulations for the Section 402 NPDES permit program defining waters of the United States. S*ee* 40 C.F.R. § 122.2.  The EPA interprets waters of the United States to include not only traditionally navigable waters but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and other waters including intermittent streams that could affect interstate commerce.  The Act requires any person who discharges or proposes to discharge pollutants into waters of the United States to submit an NPDES permit application. 40 C.F.R. § 122.21.

17.     A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling.  *Id.* at 783.

18.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits including general NPDES permits in California.

**General Permit**

19.     The State Board elected to issue a statewide general permit for industrial storm water discharges.  The State Board originally issued the General Permit on or about November 19, 1991.  The State Board modified the General Permit on or about September 17, 1992.  Pertinent to this action, the State Board reissued the General

COMPLAINT

Permit on or about April 17, 1997 (the "1997 Permit"), and again on or about April 1, 2014 (the "2015 Permit"), pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).  The 1997 Permit was in effect between 1997 and June 30, 2015. The 2015 Permit went into effect on July 1, 2015.  The 2015 Permit maintains or makes more stringent the same requirements as the 1997 Permit.

20.     In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.  33 U.S.C. § 1311(a).

21.     The General Permit contains several prohibitions.  Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  Discharge Prohibition A(2) of the 1997 Permit and Discharge Prohibition III(C) of the 2015 Permit prohibit storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitation C(1) of the 1997 Permit and Receiving Water Limitation VI(B) of the 2015 Permit prohibit storm water discharges to any surface or ground water that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the 2015 Permit prohibit storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

22.     In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet.  Facilities

COMPLAINT

1   discharging, or having the potential to discharge, storm water associated with

2   industrial activity that have not obtained an individual NPDES permit must apply for

3   coverage under the State's General Permit by filing a Notice of Intent to Comply

4   ("NOI"). Dischargers have been required to file NOIs since March 30, 1992.

5          23.    Dischargers must develop and implement a Storm Water Pollution

6   Prevention Plan ("SWPPP"). The SWPPP must describe storm water control facilities

7   and measures that comply with the BAT and BCT standards. For dischargers

8   beginning industrial activities before October 1, 1992, the General Permit requires

9   that an initial SWPPP has been developed and implemented before October 1, 1992.

10  The objective of the SWPPP requirement is to identify and evaluate sources of

11  pollutants associated with industrial activities that may affect the quality of storm

12  water discharges and authorized non-storm water discharges from the facility, and to

13  implement best management practices ("BMPs") to reduce or prevent pollutants

14  associated with industrial activities in storm water discharges and authorized non-

15  storm water discharges. *See* 1997 Permit, § A(2); 2015 Permit, § X(C). These BMPs

16  must achieve compliance with the General Permit's effluent limitations and receiving

17  water limitations, including the BAT and BCT technology mandates. To ensure

18  compliance with the General Permit, the SWPPP must be evaluated and revised as

19  necessary. 1997 Permit, §§ A(9), (10); 2015 Permit, § X(B). Failure to develop or

20  implement an adequate SWPPP, or update or revise an existing SWPPP as required, is

21  a violation of the General Permit. 2015 Permit, Fact Sheet § I(1).

22          24.    Sections A(3)-A(10) of the 1997 Permit set forth the requirements for a

23  SWPPP. Among other requirements, the SWPPP must include: a pollution prevention

24  team; a site map; a list of significant materials handled and stored at the site; a

25  description of potential pollutant sources; an assessment of potential pollutant sources;

26  and a description of the BMPs to be implemented at the facility that will reduce or

27

28  COMPLAINT

8

prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective. Sections X(D) – X(I) of the 2015 Permit set forth essentially the same SWPPP requirements as the 1997 Permit, except that all dischargers are now required to develop and implement a set of minimum BMPs, as well as any advanced BMPs as necessary to achieve BAT/BCT, which serve as the basis for compliance with the 2015 Permit's technology-based effluent limitations and receiving water limitations. See 2015 Permit, § X(H).  The 2015 Permit further requires a more comprehensive assessment of potential pollutant sources than the 1997 Permit; more specific BMP descriptions; and an additional BMP summary table identifying each identified area of industrial activity, the associated industrial pollutant sources, the industrial pollutants, and the BMPs being implemented.  See 2015 Permit, §§ X(G)(2), (4), (5).  Section X(E) of the 2015 Permit requires that the SWPPP map depict, *inter alia*, all storm water discharge locations.

25.    The 2015 Permit requires dischargers to implement and maintain, to the extent feasible, all of the following minimum BMPs in order to reduce or prevent pollutants in industrial storm water discharges: good housekeeping, preventive maintenance, spill and leak prevention and response, material handling and waste management, erosion and sediment controls, an employee training program, and quality assurance and record keeping.  *See* 2015 Permit, § X(H)(1).  Failure to implement all of these minimum BMPs is a violation of the 2015 Permit.  See 2015 Permit, Fact Sheet § I(2)(o).  The 2015 Permit further requires dischargers to implement and maintain, to the extent feasible, any one or more of the following advanced BMPs necessary to reduce or prevent discharges of pollutants in industrial storm water discharges: exposure minimization BMPs, storm water containment and discharge reduction BMPs, treatment control BMPs, and other advanced BMPs.  See

COMPLAINT

9

2015 Permit, § X(H)(2).  Failure to implement advanced BMPs as necessary to achieve compliance with either technology or water quality standards is a violation of the 2015 Permit.  *Id*.  The 2015 Permit also requires that the SWPPP include BMP descriptions and a BMP Summary Table.  *See* 2015 Permit, § X(H)(4), (5).

26.     The General Permit requires dischargers to develop and implement an adequate written Monitoring and Reporting Program.  The primary objective of the Monitoring and Reporting Program is to detect and measure the concentrations of pollutants in a facility's discharge to ensure compliance with the General Permit's discharge prohibitions, effluent limitations, and receiving water limitations.  As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.  The 1997 Permit required dischargers to collect storm water samples during the first hour of discharge from the first storm event of the wet season, and at least one other storm event during the wet season, from all storm water discharge locations at a facility.  *See* 1997 Permit, § B(5).  The 2015 Permit now mandates that facility operators sample *four* (rather than two) storm water discharges from all discharge locations over the course of the reporting year.  *See* 2015 Permit, §§ XI(B)(2), (3).

27.     Under the 1997 Permit, facilities must analyze storm water samples for "toxic chemicals and other pollutants that are likely to be present in storm water discharges in significant quantities."  1997 Permit, § B(5)(c)(ii).  Under the 2015 Permit, facilities must analyze storm water samples for "[a]dditional parameters identified by the Discharger on a facility-specific basis that serve as indicators of the presence of all industrial pollutants identified in the pollutant source assessment."  2015 Permit, § XI(B)(6)(c).

COMPLAINT

28.     Under the 2015 Permit, a facility must analyze collected samples for "[a]dditional applicable industrial parameters related to receiving waters with 303(d) listed impairments or approved TMDLs based on the assessment in Section X.G.2.a.ix." 2015 Permit, § XI(B)(6)(d).

29.     Facilities are required to make monthly visual observations of storm water discharges. The visual observations must represent the quality and quantity of the facility's storm water discharges from the storm event. 1997 Permit, § B(7); 2015 Permit, § XI.A.

30.     Section XI(B)(2) of the 2015 Permit requires that dischargers collect and analyze storm water samples from two qualifying storm events ("QSEs") during the first half of each reporting year (July 1 to December 31) and two QSEs during the second half of each reporting year (January 1 to June 30).

31.     Section B(14) of the 1997 Permit requires dischargers to include laboratory reports with their Annual Reports submitted to the Regional Board. This requirement is continued with the 2015 Permit. Fact Sheet, Paragraph O.

32.     The 1997 Permit, in relevant part, requires that the Annual Report include an Annual Comprehensive Site Compliance Evaluation Report ("ACSCE Report"). 1997 Permit, § B(14). As part of the ACSCE Report, the facility operator must review and evaluate all of the BMPs to determine whether they are adequate or whether SWPPP revisions are needed. The Annual Report must be signed and certified by a duly authorized representative, under penalty of law that the information submitted is true, accurate, and complete to the best of his or her knowledge. The 2015 Permit now requires operators to conduct an Annual Comprehensive Facility Compliance Evaluation ("Annual Evaluation") that evaluates the effectiveness of current BMPs and the need for additional BMPs based on visual observations and sampling and analysis results. *See* 2015 Permit, § XV.

COMPLAINT

33.     The General Permit does not provide for any mixing zones by dischargers.  The General Permit does not provide for any receiving water dilution credits to be applied by dischargers.

**Basin Plan**

34.     The Regional Board has identified beneficial uses and established water quality standards for the Los Angeles River, including its tributary, Bull Creek, in the "Water Quality Control Plan, Los Angeles Region Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties," generally referred to as the Basin Plan.

35.     The beneficial uses of these waters include, among others, municipal and domestic supply, groundwater recharge, water contact recreation, non-contact water recreation, warm freshwater habitat, wildlife habitat, wetland habitat, marine habitat, rare, threatened, or endangered species, preservation of biological habitats, migration of aquatic organisms, spawning, reproduction, and/or early development, and shellfish harvesting.  The non-contact water recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but not normally involving contact with water where water ingestion is reasonably possible.  These uses include, but are not limited to, picnicking, sunbathing, hiking, beachcombing, camping, boating, tidepool and marine life study, hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities."

36.     The Basin Plan includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that are toxic to, or that produce detrimental physiological responses in, human, plant, animal, or aquatic life."

37.     The Basin Plan includes a narrative oil and grease standard which states that "[w]aters shall not contain oils, greases, waxes, or other materials in

COMPLAINT

concentrations that result in a visible film or coating on the surface of the water or on objects in the water, that cause nuisance, or that otherwise adversely affect beneficial uses."

38.     The Basin Plan provides that "[w]aters shall not contain suspended or settleable material in concentrations that cause nuisance or adversely affect beneficial uses."

39.     The Basin Plan provides that "[t]he pH of inland surface waters shall not be raised above 8.5 or depressed below 6.5."

40.     The Basin Plan provides that "[s]urface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use."

41.     The Basin Plan provides that "[w]aters shall not contain floating materials, including solids, liquids, foams, and scum, in concentrations that cause nuisance or adversely affect beneficial uses."

42.     The Basin Plan provides that "[w]aters shall be free of coloration that causes nuisance or adversely affects beneficial uses."

43.     The Basin Plan provides a chemical constituent standard that "[s]urface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use.  Water designated for use as Domestic or Municipal Supply (MUN) shall not contain concentrations of chemical constituents in excess of the limits specified in the following provisions of Title 22 of the California Code of Regulations which are incorporated by reference into this plan: Table 64431-A of Section 64431 (Inorganic Chemicals)…"  The Basin Plan provides a Maximum Contaminant Level ("MCL") for aluminum of 1 mg/L.

44.     The EPA has adopted freshwater numeric water quality standards for zinc of 0.120 mg/L (Criteria Maximum Concentration – "CMC"); for copper of 0.013

COMPLAINT

mg/L (CMC); and for lead of 0.065 mg/L (CMC).  65 Fed. Reg. 31712 (May 18, 2000) (California Toxics Rule).

45.     The EPA 303(d) List of Water Quality Limited Segments lists the Bull Creek as impaired for indicator bacteria.  See http://www.waterboards.ca.gov/ water_issues/programs/tmdl/integrated2012.shtml.  Reach 5 of the Los Angeles River is listed as impaired for copper, lead, oil, nutrients, and trash, among other pollutants. Reach 4 of the Los Angeles River is listed as impaired for copper, lead, nutrients, and trash, among other pollutants.  Reach 2 of the Los Angeles River is impaired for trash, oil, nutrients, copper, and lead, among other pollutants.  Reach 1 of the Los Angeles River is impaired for zinc, lead, copper, trash, pH, nutrients, and pathogens, among other pollutants.  The Los Angeles River Estuary is impaired for trash and sediment toxicity, among other pollutants.  San Pedro Bay is impaired for sediment toxicity, among other pollutants.

46.     EPA has established Parameter Benchmark Values as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  These benchmarks represent pollutant concentrations at which a storm water discharge could potentially impair, or contribute to impairing, water quality, or affect human health from ingestion of water or fish.  The following EPA benchmarks have been established for pollution parameters applicable to the facilities at issue: pH – 6.0 - 9.0 standard units ("s.u."); total suspended solids ("TSS") – 100 mg/L; oil and grease ("O&G") – 15 mg/L; chemical oxygen demand ("COD") – 120 mg/L; iron – 1.0 mg/L; aluminum – 0.75 mg/L.  Additional EPA Benchmarks for heavy metals, which depend on the hardness of the receiving water, also apply to storm water discharges from the facilities at issue.

47.     The Numeric Action Levels ("NALs") in the 2015 Permit are derived from these benchmarks.  The 2015 Permit incorporates annual NALs, which are

COMPLAINT

derived from the 2008 MSGP benchmark values, and instantaneous maximum NALs, which are derived from a Water Board dataset. The following annual NALs have been established under the 2015 Permit: TSS – 100 mg/L; O&G – 15 mg/L; COD – 120 mg/L; iron – 1.0 mg/L; aluminum – 0.75 mg/L; zinc – 0.26 mg/L; copper – 0.0332 mg/L; and lead – 0.262 mg/L. An exceedance of annual NALs occurs when the average of all samples obtained for an entire facility during a single reporting year is greater than a particular annual NAL. The reporting year runs from July 1 to June 30. The 2015 Permit also establishes the following instantaneous maximum NALs: pH – 6.0-9.0 s.u.; TSS – 400 mg/L; and O&G – 25 mg/L. An instantaneous maximum NAL exceedance occurs when two or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value (for TSS and O&G) or are outside of the instantaneous maximum NAL range for pH. When a discharger exceeds an applicable NAL, it is elevated to "Level 1 Status," which requires a revision of the SWPPP and additional BMPs. If a discharger exceeds an applicable NAL during Level 1 Status, it is then elevated to "Level 2 Status." For Level 2 Status, a discharger is required to submit an Action Plan requiring a demonstration of either additional BMPs to prevent exceedances, a determination that the exceedance is solely due to non-industrial pollutant sources, or a determination that the exceedance is solely due to the presence of the pollutant in the natural background.

48.     Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $52,414 for violations occurring after November 2, 2015; and up to $37,500 per day per violation occurring since October 28, 2011, up to and including

COMPLAINT

November 2, 2015, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365.  *See also* 40 C.F.R. §§ 19.1 - 19.4.

## V.     STATEMENT OF FACTS

### Violations at Los Angeles Plant

49.     Defendant owns and/or operates the Los Angeles Plant, a recycling facility located in Los Angeles, CA.

50.     The Los Angeles Plant falls within Standard Industrial Classification ("SIC") Code 5093.

51.     The Los Angeles Plant is comprised of two separate plants, known as Plant #1 and Plant #2.  The two plants cover an area of approximately 2.9 acres and are nearly entirely paved.

52.     Based on Waterkeeper's investigation, including a review of the Los Angeles Plant's Notice of Intent to Comply with the Terms of the Industrial General Permit ("NOI"), SWPPP, aerial photography, and Waterkeeper's information and belief, storm water is collected and discharged from the Los Angeles Plant via at least three outfalls.  Storm water discharged from the Los Angeles Plant flows into channels that empty into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay (collectively, "Los Angeles Plant Receiving Waters").

53.     Information available to Plaintiff indicates that the Los Angeles Plant Receiving Waters are waters of the United States.

54.     Plaintiff is informed and believes, and thereupon alleges that the storm water flows over the surface of the Los Angeles Plant where industrial activities occur including receiving materials and product transport, maintenance of forklifts and equipment, welding, and areas where airborne materials associated with the industrial

COMPLAINT

16

processes at the Los Angeles Plant may settle onto the ground.  Plaintiff is informed and believes, and thereupon alleges that storm water flowing over these areas collects suspended sediment, dirt, metals, and other pollutants as it flows towards the storm water discharge locations.

55.    On information and belief, Plaintiff alleges that the majority of storm water discharges from the Los Angeles Plant contain storm water that is commingled with runoff from areas at the Los Angeles Plant where industrial processes occur.

56.    On information and belief, Waterkeeper alleges that there are insufficient structural storm water control measures installed at the Los Angeles Plant.  Plaintiff is informed and believes, and thereupon alleges, that the management practices at the Los Angeles Plant are currently inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.  The Los Angeles Plant lacks sufficient structural controls such as grading, berming, roofing, containment, or drainage structures to prevent rainfall and storm water flows from coming into contact with exposed areas of contaminants.  The Los Angeles Plant lacks sufficient structural controls to prevent the discharge of water once contaminated.  The Los Angeles Plant lacks adequate storm water pollution treatment technologies to treat storm water once contaminated.

57.    Since at least October 11, 2012, Defendant has taken samples or arranged for samples to be taken of storm water discharges at the Los Angeles Plant.  The sample results were reported in the Los Angeles Plant's Annual Reports submitted to the Regional Board.  Defendant certified each of those Annual Reports pursuant to the General Permit.

58.    In Annual Reports and storm water sampling results submitted to the Regional Board, the Los Angeles Plant has consistently reported high pollutant levels from its storm water sampling results.

COMPLAINT

59.     The Los Angeles Plant has reported numerous discharges in excess of numeric water quality standards established in the Basin Plan.  These observations have thus violated numeric water quality standards established in the Basin Plan and have thus violated Discharge Prohibition A(2) and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; Discharge Prohibitions III(C) and III(D) and Receiving Water Limitations VI(A) and VI(B) of the 2015 Permit; and are evidence of ongoing violations of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

60.     The levels of zinc in storm water detected by the Los Angeles Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.12 mg/L for zinc (CMC) for zinc.  For example, on December 15, 2016, the level of zinc measured at one of the Los Angeles Plant's storm water outfalls was 0.299 mg/L.  That level of zinc is 2.5 times the CMC for zinc.  Defendant also has measured levels of zinc in storm water discharged from the Los Angeles Plant in excess of 0.12 mg/L on February 6, 2017; May 14, 2015; and October 11, 2012.

61.     The levels of zinc in storm water detected by the Los Angeles Plant have exceeded the benchmark value and annual NAL for zinc of 0.26 mg/L established by EPA and the State Board, respectively.  For example, on December 15, 2016, the level of zinc measured at one of the Los Angeles Plant's storm water outfalls was 0.299 mg/L. Defendant also has measured levels of zinc in storm water discharged from the Los Angeles Plant in excess of 0.26 mg/L on May 14, 2015; and October 11, 2012.

62.     The levels of copper in storm water detected by the Los Angeles Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.013 mg/L (CMC).  For example, on December 15, 2016, the level of copper measured at one of the Los Angeles Plant's storm water outfalls was 0.0627 mg/L.  That level of copper is almost 5 times the CMC for copper.  Defendant also has

COMPLAINT

18

measured levels of copper in storm water discharged from the Los Angeles Plant in excess of 0.013 mg/L on February 6, 2017; May 14, 2015; and October 11, 2012.

63.     The levels of copper in storm water detected by the Los Angeles Plant have exceeded the benchmark value and annual NAL for copper of 0.0332 mg/L established by EPA and the State Board, respectively.  For example, on December 15, 2016, the level of copper measured by Defendant at one of the Los Angeles Plant's storm water outfalls was 0.0627 mg/L.  That level of copper is nearly twice the benchmark value and annual NAL for copper.  Defendant also measured levels of copper in storm water discharged from the Los Angeles Plant in excess of 0.0332 mg/L on May 14, 2015.

64.     The levels of iron in storm water detected by the Los Angeles Plant have exceeded the benchmark value and annual NAL for iron of 1 mg/L established by EPA and the State Board, respectively.  For example, on May 14, 2015, the level of iron measured by Defendant at one of the Los Angeles Plant's storm water outfalls was 1.53 mg/L.  That level of iron is over 1.5 times the benchmark value and annual NAL for iron.  Defendant also measured levels of iron in storm water discharged from the Los Angeles Plant in excess of 1 mg/L on October 11, 2012.

65.     The levels of aluminum in storm water detected by the Los Angeles Plant have exceeded the benchmark value and annual NAL for aluminum of 0.75 mg/L established by EPA and the State Board, respectively.  On May 14, 2015, the level of aluminum measured by Defendant at one of the Los Angeles Plant's storm water outfalls was 0.82 mg/L.

66.     The levels of COD in storm water detected by the Los Angeles Plant have exceeded the benchmark value and annual NAL for COD of 120 mg/L established by EPA and the State Board, respectively.  For example, on October 11, 2012, the level of COD measured by Defendant at one of the Los Angeles Plant's

COMPLAINT

19

storm water outfalls was 418 mg/L.  That level of COD is almost 3.5 time the benchmark value and annual NAL for COD.  Defendant also measured levels of COD in storm water discharged from the Los Angeles Plant in excess of 120 mg/L on May 14, 2015.

67.     On information and belief, Waterkeeper alleges that COD, iron, aluminum, and lead are pollutants likely to be present in the Los Angeles Plant's storm water discharges in significant quantities and that those pollutants have been present in the facility's storm water discharges during the past five years.  On information and belief, Waterkeeper alleges that the Los Angeles Plant is required to analyze its storm water discharges for COD, iron, aluminum, and lead because the facility falls under SIC Code 5093.  Defendant also indicated in the SWPPP for the Los Angeles Plant that metals are likely to be present in the facility's storm water discharges.

68.     Waterkeeper alleges that Defendant has failed to analyze the Los Angeles Plant's storm water discharges for COD, iron, aluminum, and lead, since May 14, 2015.

69.      On information and belief, LAW alleges that during the 2016-2017 and 2015-2016 reporting years, as well as the 2013-2014 wet season, City Fibers failed to collect and analyze storm water samples from any storm events at the Los Angeles Plant.

70.     On information and belief, LAW alleges that during the 2015-2016 reporting year, City Fibers failed to collect and analyze storm water samples from any storm events at the Los Angeles Plant.

71.     On information and belief, LAW alleges that during the 2014-2015 and 2012-2013 wet seasons, City Fibers failed to collect and analyze storm water samples from a second storm event at the Los Angeles Plant.

72.     On information and belief, LAW alleges that during the 2014-2015 and

COMPLAINT

2012-2013 wet seasons, when it did collect samples, City Fibers failed to collect and analyze storm water discharges from two of its three outfalls.

73.     On information and belief, Waterkeeper alleges that discharges occurred from the Los Angeles Plant on the following dates: November 29, 2012; December 18, 2012; December 24, 2012; January 24, 2013; February 19, 2013; March 8, 2013; May 6, 2013; November 21, 2013; November 29, 2013; December 19, 2013; February 27, 2014; April 1, 2014; October 31, 2014; December 12, 2014; December 16, 2014; December 30, 2014; April 7, 2015; May 8, 2015; September 15, 2015; October 5, 2015; January 5, 2016; February 17, 2016; March 11, 2016; April 8, 2016; October 17, 2016; December 15, 2016; December 21, 2016; December 30, 2016; January 5, 2017; January 9, 2017; January 19, 2017; February 3, 2017; February 6, 2017; February 10, 2017; and February 17, 2017.

74.     On information and belief, Waterkeeper alleges that Defendant has consistently failed to comply with Section B(14) of the 1997 Permit, and Section XV of the 2015 Permit, by failing to complete proper ACSCE Reports as well as proper Annual Evaluations for the Los Angeles Plant.

75.     On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement BAT and BCT at the Los Angeles Plant for its discharges of COD, iron, aluminum, zinc, copper, lead, and other potentially un-monitored pollutants.  Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit requires that Defendant implement BAT for toxic and nonconventional pollutants and BCT for conventional pollutants by no later than October 1, 1992.  As of the date of this Complaint, Defendant has failed to implement BAT and BCT.

76.     LAW alleges that the monitoring program for the Los Angeles Plant does not comply with Section XI(B)(6)(c) of the General Permit because it fails to include

COMPLAINT

21

monitoring for COD, iron, aluminum, zinc, copper, and lead.

77.     On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement an adequate SWPPP for the Los Angeles Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Los Angeles Plant does not set forth site-specific best management practices for the facility that are consistent with BAT or BCT for the Los Angeles Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Los Angeles Plant does not comply with the requirements of Section X(H) of the 2015 Permit.  The SWPPP also fails to identify and implement advanced BMPs that are not being implemented at the Los Angeles Plant because they do not reflect best industry practice considering BAT/BCT.  According to information available to Waterkeeper, the Los Angeles Plant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by the General Permit.  The SWPPP for the Los Angeles Plant fails to comply with the requirements of Section X(D)(1)(c) of the 2015 Permit by failing to include detailed information about procedures to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned team members are temporarily unavailable.  The SWPPP for the Los Angeles Plant fails to comply with the requirements of Section X(D)(2)(4) of the 2015 Permit by failing to document the Los Angeles Plant's scheduled operating hours.  LAW alleges that the SWPPP for the Los Angeles Plant contains an insufficient pollutant source assessment in that it fails to identify COD, iron, aluminum, zinc, copper, and lead as industrial pollutants.

78.     Information available to Waterkeeper indicates that as a result of these practices, storm water containing excessive pollutants is being discharged from the

COMPLAINT

Los Angeles Plant during rain events into channels that empty into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay.

79.    Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the Los Angeles Plant's SWPPP and site-specific BMPs consistent with the General Permit.

80.    Information available to Plaintiff indicates that Defendant has not fulfilled the requirements set forth in the General Permit for discharges from the Los Angeles Plant due to the continued discharge of contaminated storm water.  Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuous.

**Violations at East Washington Plant**

81.    Defendant owns and/or operates the East Washington Plant, a recycling facility located in Los Angeles, CA.

82.    The East Washington Plant falls within SIC Code 5093.

83.    The East Washington Plant covers an area of approximately 3.6 acres and is fully paved.

84.    Based on Waterkeeper's investigation, including a review of the East Washington Plant's NOI, SWPPP, aerial photography, and Waterkeeper's information and belief, storm water is collected and discharged from the East Washington Plant via at least two outfalls.  Storm water discharged from the Los Angeles Plant flows into channels that empty into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay (collectively, "East Washington Plant Receiving Waters").

85.    Information available to Plaintiff indicates the East Washington Plant

COMPLAINT

23

Receiving Waters are waters of the United States.

86.     Plaintiff is informed and believes, and thereupon alleges that the storm water flows over the surface of the East Washington Plant where industrial activities occur including receiving materials and product transport, maintenance of equipment, welding, and areas where airborne materials associated with the industrial processes at the East Washington Plant may settle onto the ground.  Plaintiff is informed and believes, and thereupon alleges that storm water flowing over these areas collects suspended sediment, dirt, metals, and other pollutants as it flows towards the storm water discharge locations.

87.     On information and belief, Plaintiff alleges that the majority of storm water discharges from the East Washington Plant contain storm water that is commingled with runoff from areas at the East Washington Plant where industrial processes occur.

88.     On information and belief, Waterkeeper alleges that there are insufficient structural storm water control measures installed at the East Washington Plant. Plaintiff is informed and believes, and thereupon alleges, that the management practices at the East Washington Plant are currently inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.  The East Washington Plant lacks sufficient structural controls such as grading, berming, roofing, containment, or drainage structures to prevent rainfall and storm water flows from coming into contact with exposed areas of contaminants.  The East Washington Plant lacks sufficient structural controls to prevent the discharge of water once contaminated.  The East Washington Plant lacks adequate storm water pollution treatment technologies to treat storm water once contaminated.

89.     Since at least May 14, 2015, Defendant has taken samples or arranged for

COMPLAINT

24

samples to be taken of storm water discharges at the East Washington Plant.  The sample results were reported in the East Washington Plant's Annual Reports submitted to the Regional Board.  Defendant certified each of those Annual Reports pursuant to the General Permit.

90.     In Annual Reports and storm water sampling results submitted to the Regional Board, the East Washington Plant has consistently reported high pollutant levels from its storm water sampling results.

91.     The East Washington Plant has reported numerous discharges in excess of numeric water quality standards established in the Basin Plan.  These observations have thus violated numeric water quality standards established in the Basin Plan and have thus violated Discharge Prohibition A(2) and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; Discharge Prohibitions III(C) and III(D) and Receiving Water Limitations VI(A) and VI(B) of the 2015 Permit; and are evidence of ongoing violations of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

92.     The levels of zinc in storm water detected by the East Washington Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.12 mg/L for zinc (CMC) for zinc.  For example, on February 6, 2017, the level of zinc measured at one of the East Washington Plant's storm water outfalls was 0.533 mg/L.  That level of zinc is almost 4.5 times the CMC for zinc.  Defendant also has measured levels of zinc in storm water discharged from the East Washington Plant in excess of 0.12 mg/L on December 23, 2017; and May 14, 2015.

93.     The levels of zinc in storm water detected by the East Washington Plant have exceeded the benchmark value and annual NAL for zinc of 0.26 mg/L established by EPA and the State Board, respectively.  For example, on February 6, 2017, the level of zinc measured at one of the East Washington Plant's storm water

COMPLAINT

outfalls was 0.533 mg/L.  That level of zinc is over twice the benchmark value and annual NAL for zinc.  Defendant also has measured levels of zinc in storm water discharged from the East Washington Plant in excess of 0.26 mg/L on May 14, 2015.

94.     The levels of copper in storm water detected by the East Washington Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.013 mg/L (CMC).  On February 6, 2017, the level of copper measured at one of the East Washington Plant's storm water outfalls was 0.0177 mg/L.  Defendant also has measured levels of copper in storm water discharged from the East Washington Plant in excess of 0.013 mg/L in every other storm water sample taken from the facility, including December 23, 2016; December 15, 2016; and May 14, 2015.

95.     The levels of copper in storm water detected by the East Washington Plant have exceeded the benchmark value and annual NAL for copper of 0.0332 mg/L established by EPA and the State Board, respectively.  On May 14, 2015, the level of copper measured by Defendant at one of the East Washington Plant's storm water outfalls was 0.044 mg/L.

96.     The levels of iron in storm water detected by the East Washington Plant have exceeded the benchmark value and annual NAL for iron of 1 mg/L established by EPA and the State Board, respectively.  On May 14, 2015, the level of iron measured by Defendant at one of the East Washington Plant's storm water outfalls was 1.2 mg/L.

97.     The levels of COD in storm water detected by the East Washington Plant have exceeded the benchmark value and annual NAL for COD of 120 mg/L established by EPA and the State Board, respectively.  On May 14, 2015, the level of COD measured by Defendant at one of the East Washington Plant's storm water outfalls was 160 mg/L.

COMPLAINT

26

98.     On information and belief, Waterkeeper alleges that COD, iron, aluminum, and lead are pollutants likely to be present in the East Washington Plant's storm water discharges in significant quantities and that those pollutants have been present in the facility's storm water discharges during the past five years.  On information and belief, Waterkeeper alleges that the East Washington Plant is required to analyze its storm water discharges for COD, iron, aluminum, and lead because the facility falls under SIC Code 5093.  Defendant also indicated in the SWPPP for the East Washington Plant that metals are likely to be present in the facility's storm water discharges.

99.     Waterkeeper alleges that Defendant has failed to analyze the East Washington Plant's storm water discharges for COD, iron, aluminum, and lead, since May 14, 2015.

100.    On information and belief, LAW alleges that during the 2016-2017 reporting year, City Fibers failed to collect and analyze storm water samples from two out of four required storm events at the East Washington Plant.

101.    On information and belief, LAW alleges that during the 2015-2016 reporting year, City Fibers failed to collect and analyze storm water samples from any storm events at the East Washington Plant.

102.    On information and belief, LAW alleges that during the 2014-2015 wet season, City Fibers failed to collect and analyze storm water samples from one of the required two storm events at the East Washington Plant.

103.    During all of the years when it has collected and analyzed storm water samples, City Fibers never collected and analyzed storm water discharges at the East Washington Plant for more than one outfall from a particular sampling event.  LAW thus alleges that City Fibers failed to collect samples from each storm water discharge location during every sampling event since December 16, 2014.

104.    On information and belief, Waterkeeper alleges that discharges occurred

COMPLAINT

from the East Washington Plant on the following dates: December 30, 2014; April 7, 2015; May 8, 2015; September 15, 2015; October 5, 2015; January 5, 2016; February 17, 2016; March 11, 2016; April 8, 2016; October 17, 2016; December 15, 2016; December 21, 2016; December 30, 2016; January 5, 2017; January 9, 2017; January 19, 2017; February 3, 2017; February 6, 2017; February 10, 2017; and February 17, 2017.

105.   On information and belief, Waterkeeper alleges that Defendant has consistently failed to comply with Section B(14) of the 1997 Permit, and Section XV of the 2015 Permit, by failing to complete proper ACSCE Reports as well as proper Annual Evaluations for the East Washington Plant.

106.   On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement BAT and BCT at the East Washington Plant for its discharges of copper, zinc, COD, iron, aluminum, TSS, and other potentially un-monitored pollutants.  Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit requires that Defendant implement BAT for toxic and nonconventional pollutants and BCT for conventional pollutants by no later than October 1, 1992.  As of the date of this Complaint, Defendant has failed to implement BAT and BCT.

107.   On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement an adequate SWPPP for the East Washington Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the East Washington Plant does not set forth site-specific best management practices for the facility that are consistent with BAT or BCT for the East Washington Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the East Washington Plant does not comply with the requirements of Section X(H) of the 2015 Permit.  The SWPPP also fails to identify

COMPLAINT

and implement advanced BMPs that are not being implemented at the East Washington Plant because they do not reflect best industry practice considering BAT/BCT.  According to information available to Waterkeeper, the East Washington Plant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by the General Permit.  The SWPPP for the East Washington Plant fails to comply with the requirements of Section X(D)(1)(c) of the 2015 Permit by failing to include detailed information about procedures to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned team members are temporarily unavailable.  The SWPPP for the East Washington Plant fails to comply with the requirements of Section X(D)(2)(4) of the 2015 Permit by failing to document the East Washington Plant's scheduled operating hours.  The SWPPP for the East Washington Plant also fails to comply with the requirements of Section X(H) of the 2015 Permit.  LAW alleges that the SWPPP for the East Washington Plant contains an insufficient pollutant source assessment in that it fails to identify COD, iron, aluminum, and lead as industrial pollutants.

108.   Information available to Waterkeeper indicates that as a result of these practices, storm water containing excessive pollutants is being discharged from the East Washington Plant during rain events into channels that empty into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay.

109.   Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the East Washington Plant's SWPPP and site-specific BMPs consistent with the General Permit.

110.   Information available to Plaintiff indicates that Defendant has not

COMPLAINT

fulfilled the requirements set forth in the General Permit for discharges from the East Washington Plant due to the continued discharge of contaminated storm water. Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuous.

### Violations at West Washington Plant

111.   Defendant owns and/or operates the West Washington Plant, a recycling facility located in Los Angeles, CA.

112.   The West Washington Plant falls within SIC Code 5093.

113.   The West Washington Plant covers an area of approximately 1.5 acres and is fully paved.

114.   Based on Waterkeeper's investigation, including a review of the West Washington Plant's NOI, SWPPP, aerial photography, and Waterkeeper's information and belief, storm water is collected and discharged from the West Washington Plant via at least two outfalls.  Storm water discharged from the Los Angeles Plant flows into channels that empty into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay (collectively, "West Washington Plant Receiving Waters").

115.   Information available to Plaintiff indicates the West Washington Plant Receiving Waters are waters of the United States.

116.   Plaintiff is informed and believes, and thereupon alleges that the storm water flows over the surface of the West Washington Plant where industrial activities occur including receiving materials and product transport, maintenance of equipment, welding, and areas where airborne materials associated with the industrial processes at the Los Angeles Plant may settle onto the ground.  Plaintiff is informed and believes, and thereupon alleges that storm water flowing over these areas collects suspended

COMPLAINT

sediment, dirt, metals, and other pollutants as it flows towards the storm water discharge locations.

117.   On information and belief, Plaintiff alleges that the majority of storm water discharges from the West Washington Plant contain storm water that is commingled with runoff from areas at the West Washington Plant where industrial processes occur.

118.   On information and belief, Waterkeeper alleges that there are insufficient structural storm water control measures installed at the West Washington Plant. Plaintiff is informed and believes, and thereupon alleges, that the management practices at the West Washington Plant are currently inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.  The West Washington Plant lacks sufficient structural controls such as grading, berming, roofing, containment, or drainage structures to prevent rainfall and storm water flows from coming into contact with exposed areas of contaminants.  The West Washington Plant lacks sufficient structural controls to prevent the discharge of water once contaminated.  The West Washington Plant lacks adequate storm water pollution treatment technologies to treat storm water once contaminated.

119.   Since at least October 5, 2011, Defendant has taken samples or arranged for samples to be taken of storm water discharges at the West Washington Plant.  The sample results were reported in the West Washington Plant's Annual Reports submitted to the Regional Board.  Defendant certified each of those Annual Reports pursuant to the General Permit.

120.   In Annual Reports and storm water sampling results submitted to the Regional Board, the West Washington Plant has consistently reported high pollutant levels from its storm water sampling results.

COMPLAINT

121.   The West Washington Plant has reported numerous discharges in excess of numeric water quality standards established in the Basin Plan.  These observations have thus violated narrative and numeric water quality standards established in the Basin Plan and have thus violated Discharge Prohibition A(2) and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; Discharge Prohibitions III(C) and III(D) and Receiving Water Limitations VI(A) and VI(B) of the 2015 Permit; and are evidence of ongoing violations of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

122.   The West Washington Plant has reported discharges outside of the range of the numeric water quality standard for pH of 6.5 – 8.5 s.u. established in the Basin Plan.  Defendant measured storm water discharges from the West Washington Plant with a pH level either below 6.5 s.u. on the following dates: May 14, 2015; and January 26, 2015.

123.   The levels of pH in storm water detected by the West Washington Plant have exceeded the benchmark value and annual NAL for pH of 6.0 – 9.0 s.u. established by EPA and the State Board, respectively.  On May 14, 2015, the level of pH in storm water measured by Defendant at one of the West Washington Plant's outfalls was 5.7 s.u.

124.   The levels of zinc in storm water detected by the West Washington Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.12 mg/L for zinc (CMC) for zinc.  For example, on February 6, 2017, the level of zinc measured at one of the West Washington Plant's storm water outfalls was 0.763 mg/L.  That level of zinc is over 6 times the CMC for zinc.  Defendant also has measured levels of zinc in storm water discharged from the West Washington Plant in excess of 0.12 mg/L on May 14, 2015, and January 26, 2015.

125.   The levels of zinc in storm water detected by the West Washington Plant

COMPLAINT

32

have exceeded the benchmark value and annual NAL for zinc of 0.26 mg/L established by EPA and the State Board, respectively.  For example, on February 6, 2017, the level of zinc measured at one of the West Washington Plant's storm water outfalls was 0.763 mg/L.  That level of zinc is almost three times the benchmark value and annual NAL for zinc.  Defendant also has measured levels of zinc in storm water discharged from the West Washington Plant in excess of 0.26 mg/L on May 14, 2015, and January 26, 2015.

126.   The levels of copper in storm water detected by the West Washington Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.013 mg/L (CMC).  On December 15, 2016, the level of copper measured at one of the West Washington Plant's storm water outfalls was 0.174 mg/L.  That level of copper is over 13 times the CMC for copper.  Defendant also has measured levels of copper in storm water discharged from the West Washington Plant in excess of 0.013 mg/L on February 6, 2017; May 14, 2015; and January 26, 2015.

127.   The levels of copper in storm water detected by the West Washington Plant have exceeded the benchmark value and annual NAL for copper of 0.0332 mg/L established by EPA and the State Board, respectively.  For example, on December 15, 2016, the level of copper measured by Defendant at one of the West Washington Plant's storm water outfalls was 0.174 mg/L.  That level of copper is over five times the benchmark value and annual NAL for copper.  Defendant also has measured levels of copper in storm water discharged from the West Washington Plant in excess of 0.0332 mg/L on February 6, 2017; May 14, 2015; and January 26, 2015.

128.   The levels of iron in storm water detected by the West Washington Plant have exceeded the benchmark value and annual NAL for iron of 1.0 mg/L established by EPA and the State Board, respectively.  For example, on January 26, 2015, the level of iron measured by Defendant at one of the West Washington Plant's storm

COMPLAINT

33

water outfalls was 2.62 mg/L.  Defendant also measured levels of iron in storm water discharged from the West Washington Plant in excess of 1.0 mg/L on May 14, 2015.

129.   The levels of O&G in storm water detected by the West Washington Plant have exceeded the benchmark value and annual NAL for O&G of 15 mg/L established by EPA and the State Board, respectively.  On January 26, 2015, the level of O&G measured by Defendant at one of the West Washington Plant's storm water outfalls was 56.9 mg/L.

130.   The levels of COD in storm water detected by the West Washington Plant have exceeded the benchmark value and annual NAL for COD of 120 mg/L established by EPA and the State Board, respectively.  For example, on January 26, 2015, the level of COD measured by Defendant at one of the West Washington Plant's storm water outfalls was 7,390 mg/L.  This level is over 61 times the benchmark and NAL for COD.  Defendant also measured levels of COD in storm water discharged from the West Washington Plant in excess of 120 mg/L on May 14, 2015.

131.   The levels of aluminum in storm water detected by the West Washington Plant have exceeded the MCL established by the Basin Plan of 1 mg/L.  On January 26, 2015, the level of aluminum measured at one of the West Washington Plant's storm water outfalls was 1.56 mg/L.

132.   The levels of aluminum in storm water detected by the West Washington Plant have exceeded the benchmark value and annual NAL for aluminum of 0.75 mg/L established by EPA and the State Board, respectively.  On January 26, 2015, the level of aluminum measured by Defendant at one of the West Washington Plant's storm water outfalls was 1.56 mg/L.

133.   On information and belief, Waterkeeper alleges that COD, zinc, iron, aluminum, and lead are pollutants likely to be present in the West Washington Plant's

storm water discharges in significant quantities and that those pollutants have been present in the facility's storm water discharges during the past five years.  On information and belief, Waterkeeper alleges that the West Washington Plant is required to analyze its storm water discharges for COD, zinc, iron, aluminum, and lead because the facility falls under SIC Code 5093.  Defendant also indicated in the SWPPP for the West Washington Plant that metals are likely to be present in the facility's storm water discharges.

134.   With the exception of analyzing zinc for a single sample taken on February 6, 2017, Waterkeeper alleges that Defendant has failed to analyze the West Washington Plant's storm water discharges for COD, iron, zinc, aluminum, and lead, since May 14, 2015.

135.    On information and belief, LAW alleges that during the 2016-2017 and 2015-2016 reporting years, City Fibers failed to collect and analyze storm water samples from any storm events at the West Washington Plant.

136.   On information and belief, LAW alleges that during the 2014-2015 wet season, City Fibers failed to collect and analyze storm water samples from its second outfall when it did collect and analyze storm water discharges from the West Washington Plant.

137.   On information and belief, LAW alleges that during the 2013-2014 and the 2012-2013 wet seasons, City Fibers failed to collect and analyze any storm water samples from the West Washington Plant.

138.   On information and belief, Waterkeeper alleges that discharges occurred from the West Washington Plant on the following dates: November 29, 2012; December 18, 2012; December 24, 2012; January 24, 2013; February 19, 2013; March 8, 2013; May 6, 2013; November 21, 2013; November 29, 2013; December 19, 2013; February 27, 2014; April 1, 2014; October 31, 2014; December 12, 2014; December 16, 2014; December 30, 2014; April 7, 2015; May 8, 2015; September 15, 2015;

COMPLAINT

35

October 5, 2015; January 5, 2016; February 17, 2016; March 11, 2016; April 8, 2016; October 17, 2016; December 15, 2016; December 21, 2016; December 30, 2016; January 5, 2017; January 9, 2017; January 19, 2017; February 3, 2017; February 6, 2017; February 10, 2017; and February 17, 2017.

139.   On information and belief, Waterkeeper alleges that Defendant has consistently failed to comply with Section B(14) of the 1997 Permit, and Section XV of the 2015 Permit, by failing to complete proper ACSCE Reports as well as proper Annual Evaluations for the West Washington Plant.

140.   On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement BAT and BCT at the West Washington Plant for its discharges of pH, O&G, copper, zinc, COD, iron, aluminum, and other potentially un-monitored pollutants.  Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit requires that Defendant implement BAT for toxic and nonconventional pollutants and BCT for conventional pollutants by no later than October 1, 1992.  As of the date of this Complaint, Defendant has failed to implement BAT and BCT.

141.   On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement an adequate SWPPP for the West Washington Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the West Washington Plant does not set forth site-specific best management practices for the facility that are consistent with BAT or BCT for the West Washington Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the West Washington Plant does not comply with the requirements of Section X(H) of the 2015 Permit.  The SWPPP also fails to identify and implement advanced BMPs that are not being implemented at the West Washington Plant because they do not reflect best industry practice considering

COMPLAINT

BAT/BCT.  According to information available to Waterkeeper, the West Washington Plant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by the General Permit.  The SWPPP for the West Washington Plant fails to comply with the requirements of Section X(D)(1)(c) of the 2015 Permit by failing to include detailed information about procedures to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned team members are temporarily unavailable.  The SWPPP for the West Washington Plant fails to comply with the requirements of Section X(D)(2)(4) of the 2015 Permit by failing to document the West Washington Plant's scheduled operating hours.  LAW alleges that the SWPPP for the West Washington Plant contains an insufficient pollutant source assessment in that it fails to identify COD, iron, aluminum, and lead as industrial pollutants.

142.    Information available to Waterkeeper indicates that as a result of these practices, storm water containing excessive pollutants is being discharged from the West Washington Plant during rain events into channels that empty into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay.

143.    Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the West Washington Plant's SWPPP and site-specific BMPs consistent with the General Permit.

144.    Information available to Plaintiff indicates that Defendant has not fulfilled the requirements set forth in the General Permit for discharges from the West Washington Plant due to the continued discharge of contaminated storm water.

COMPLAINT

37

Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuous.

**Violations at West Valley Plant**

145.   Defendant owns and/or operates the West Valley Plant, a recycling facility located in Los Angeles, CA.

146.   The West Valley Plant falls within SIC Code 5093.

147.   The West Valley Plant covers an area of approximately 2 acres and is fully paved.

148.   Based on Waterkeeper's investigation, including a review of the West Valley Plant's NOI, SWPPP, aerial photography, and Waterkeeper's information and belief, storm water is collected and discharged from the West Valley Plant via at least one outfall.  Storm water discharged from the Los Angeles Plant flows into channels that empty into Bull Creek, which flows into Reach 5 of the Los Angeles River, which flows into Reach 4 of the Los Angeles River, which flows into Reach 3 of the Los Angeles River, which flows into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay (collectively, "West Valley Plant Receiving Waters").

149.   Information available to Plaintiff indicates the West Valley Plant Receiving Waters are waters of the United States.

150.   Plaintiff is informed and believes, and thereupon alleges that the storm water flows over the surface of the West Valley Plant where industrial activities occur including receiving materials and product transport, maintenance of equipment, welding, and areas where airborne materials associated with the industrial processes at the Los Angeles Plant may settle onto the ground.  Plaintiff is informed and believes, and thereupon alleges that storm water flowing over these areas collects suspended

COMPLAINT

38

sediment, dirt, metals, and other pollutants as it flows towards the storm water discharge locations.

151.   On information and belief, Plaintiff alleges that the majority of storm water discharges from the West Valley Plant contain storm water that is commingled with runoff from areas at the West Valley Plant where industrial processes occur.

152.   On information and belief, Waterkeeper alleges that there are insufficient structural storm water control measures installed at the West Valley Plant.  Plaintiff is informed and believes, and thereupon alleges, that the management practices at the West Valley Plant are currently inadequate to prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.  The West Valley Plant lacks sufficient structural controls such as grading, berming, roofing, containment, or drainage structures to prevent rainfall and storm water flows from coming into contact with exposed areas of contaminants.  The West Valley Plant lacks sufficient structural controls to prevent the discharge of water once contaminated.  The West Valley Plant lacks adequate storm water pollution treatment technologies to treat storm water once contaminated.

153.   Since at least December 12, 2011, Defendant has taken samples or arranged for samples to be taken of storm water discharges at the West Valley Plant. The sample results were reported in the West Valley Plant's Annual Reports submitted to the Regional Board.  Defendant certified each of those Annual Reports pursuant to the General Permit.

154.   In Annual Reports and storm water sampling results submitted to the Regional Board, the West Valley Plant has consistently reported high pollutant levels from its storm water sampling results.

155.   The West Valley Plant has reported numerous discharges in excess of numeric water quality standards established in the Basin Plan.  These observations

have thus violated numeric water quality standards established in the Basin Plan and have thus violated Discharge Prohibition A(2) and Receiving Water Limitations C(1) and C(2) of the 1997 Permit; Discharge Prohibitions III(C) and III(D) and Receiving Water Limitations VI(A) and VI(B) of the 2015 Permit; and are evidence of ongoing violations of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

156.   The levels of zinc in storm water detected by the West Valley Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.12 mg/L for zinc (CMC) for zinc.  On October 11, 2012, the level of zinc measured at the West Valley Plant's storm water outfall was 0.451 mg/L.  That level of zinc is almost 4 times the CMC for zinc.

157.   The levels of zinc in storm water detected by the West Valley Plant have exceeded the benchmark value and annual NAL for zinc of 0.26 mg/L established by EPA and the State Board, respectively.  On October 11, 2012, the level of zinc measured at the West Valley Plant's storm water outfall was 0.451 mg/L.  That level of zinc is almost twice the benchmark value and annual NAL for zinc.

158.   The levels of copper in storm water detected by the West Valley Plant have exceeded the freshwater numeric water quality standard established by the EPA of 0.013 mg/L (CMC).  On October 11, 2012, the level of copper measured at the West Valley Plant's storm water outfall was 0.0926 mg/L.  That level of copper is over 7 times the CMC for copper.

159.   The levels of copper in storm water detected by the West Valley Plant have exceeded the benchmark value and annual NAL for copper of 0.0332 mg/L established by EPA and the State Board, respectively.  On October 11, 2012, the level of copper measured by Defendant at the West Valley Plant's storm water outfall was 0.0926 mg/L.  That level of copper is almost three times the benchmark value and

COMPLAINT

40

annual NAL for copper.

160.   The levels of aluminum in storm water detected by the West Valley Plant have exceeded the MCL established by the Basin Plan of 1 mg/L.  On October 11, 2012, the level of aluminum measured at the West Valley Plant's storm water outfall was 1.72 mg/L.

161.   The levels of aluminum in storm water detected by the West Valley Plant have exceeded the benchmark value and annual NAL for aluminum of 0.75 mg/L established by EPA and the State Board, respectively.  On October 11, 2012, the level of aluminum measured by Defendant at the West Valley Plant's storm water outfall was 1.72 mg/L.  That level of aluminum is over twice the benchmark value and annual NAL for aluminum.

162.   The levels of iron in storm water detected by the West Valley Plant have exceeded the benchmark value and annual NAL for iron of 1.0 mg/L established by EPA and the State Board, respectively.  On October 11, 2012, the level of iron measured by Defendant at West Valley Plant's storm water outfalls was 2.92 mg/L.

163.   The levels of COD in storm water detected by the West Valley Plant have exceeded the benchmark value and annual NAL for COD of 120 mg/L established by EPA and the State Board, respectively.  On October 11, 2012, the level of COD measured by Defendant at the West Valley Plant's storm water outfall was 213 mg/L.

164.   The levels of TSS in storm water detected by the West Valley Plant have exceeded the benchmark value and annual NAL for TSS of 100 mg/L established by EPA and the State Board, respectively.  For example, on December 23, 2016, the level of TSS measured by Defendant at the West Valley Plant's storm water outfall was 229 mg/L.  Defendant also measured levels of TSS in storm water discharged from the West Valley Plant in excess of 100 mg/L on December 16, 2016, and October 11,

COMPLAINT

2012.

165.   On information and belief, Waterkeeper alleges that COD, zinc, iron, aluminum, copper, and lead are pollutants likely to be present in the West Valley Plant's storm water discharges in significant quantities and that those pollutants have been present in the facility's storm water discharges during the past five years.  On information and belief, Waterkeeper alleges that the West Valley Plant is required to analyze its storm water discharges for COD, zinc, iron, aluminum, and lead because the facility falls under SIC Code 5093.  Defendant also indicated in the SWPPP for the West Valley Plant that metals are likely to be present in the facility's storm water discharges.

166.   Waterkeeper alleges that Defendant has failed to analyze the West Valley Plant's storm water discharges for COD, iron, zinc, aluminum, copper, and lead, since October 11, 2012.

167.    On information and belief, LAW alleges that during the 2016-2017 and 2015-2016 reporting years, as well as the 2014-2015 and 2013-2014 wet seasons, City Fibers failed to collect and analyze storm water samples from any storm events at the West Valley Plant.

168.   On information and belief, LAW alleges that during the 2012-2013 wet season, City Fibers failed to collect and analyze storm water samples from a second storm event at the West Valley Plant.

169.    On information and belief, Waterkeeper alleges that discharges occurred from the West Valley Plant on the following dates: November 29, 2012; December 12, 2012; December 24, 2012; January 24, 2013; February 19, 2013; March 7, 2013; May 6, 2013; November 29, 2013; December 19, 2013; February 6, 2014; February 26, 2014; April 1, 2014; October 31, 2014; December 11, 2014; December 16, 2014; May 14, 2015; September 15, 2015; December 22, 2015; January 5, 2016; February 17, 2016; March 11, 2016; May 6, 2016; October 17, 2016; December 15, 2016;

COMPLAINT

December 21, 2016; December 30, 2016; January 4, 2017; January 19, 2017; February 3, 2017; February 6, 2017; February 17, 2017.

170.    On information and belief, Waterkeeper alleges that Defendant has consistently failed to comply with Section B(14) of the 1997 Permit, and Section XV of the 2015 Permit, by failing to complete proper ACSCE Reports as well as proper Annual Evaluations for the West Valley Plant.

171.    On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement BAT and BCT at the West Valley Plant for its discharges of TSS, COD, iron, aluminum, zinc, copper, and other potentially un-monitored pollutants.  Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit requires that Defendant implement BAT for toxic and nonconventional pollutants and BCT for conventional pollutants by no later than October 1, 1992.  As of the date of this Complaint, Defendant has failed to implement BAT and BCT.

172.    On information and belief, Plaintiff alleges that since at least June 11, 2012, Defendant has failed to implement an adequate SWPPP for the West Valley Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the West Valley Plant does not set forth site-specific best management practices for the facility that are consistent with BAT or BCT for the West Valley Plant.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the West Valley Plant does not comply with the requirements of Section X(H) of the 2015 Permit.  The SWPPP also fails to identify and implement advanced BMPs that are not being implemented at the West Valley Plant because they do not reflect best industry practice considering BAT/BCT.  According to information available to Waterkeeper, the West Valley Plant's SWPPP has not been evaluated to ensure its effectiveness and revised where necessary to further reduce pollutant

COMPLAINT

43

discharges.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by the General Permit.  The SWPPP for the West Valley Plant fails to comply with the requirements of Section X(D)(1)(c) of the 2015 Permit by failing to include detailed information about procedures to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned team members are temporarily unavailable.  The SWPPP for the West Valley Plant fails to comply with the requirements of Section X(D)(2)(4) of the 2015 Permit by failing to document the West Valley Plant's scheduled operating hours.  LAW alleges that the SWPPP for the West Valley Plant contains an insufficient pollutant source assessment in that it fails to identify COD, iron, aluminum, copper, and lead as industrial pollutants.

173.   Information available to Waterkeeper indicates that as a result of these practices, storm water containing excessive pollutants is being discharged from the West Valley Plant during rain events into channels that empty into Bull Creek, which flows into Reach 5 of the Los Angeles River, which flows into Reach 4 of the Los Angeles River, which flows into Reach 3 of the Los Angeles River, which flows into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay.

174.    Plaintiff is informed and believes, and thereupon alleges, that Defendant has failed and continues to fail to alter the West Valley Plant's SWPPP and site-specific BMPs consistent with the General Permit.

175.   Information available to Plaintiff indicates that Defendant has not fulfilled the requirements set forth in the General Permit for discharges from the West Valley Plant due to the continued discharge of contaminated storm water.  Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this

COMPLAINT

Complaint are ongoing and continuous.

## VI.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Failure to Implement the Best Available and
Best Conventional Treatment Technologies
(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

176.    Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

177.    The General Permit's SWPPP requirements and Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.  Defendant has failed to implement BAT and BCT at the Los Angeles Plant for their discharges of COD, iron, aluminum, zinc, copper, lead, and other potentially un-monitored pollutants in violation of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

178.     Defendant has failed to implement BAT and BCT at the East Washington Plant for their discharges of copper, zinc, COD, iron, aluminum, TSS, and other potentially un-monitored pollutants in violation of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

179.    Defendant has failed to implement BAT and BCT at the West Washington Plant for their discharges of pH, O&G, copper, zinc, COD, iron, aluminum, and other potentially un-monitored pollutants in violation of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

180.     Defendant has failed to implement BAT and BCT at the West Valley Plant for their discharges of TSS, COD, iron, aluminum, zinc, copper, and other

COMPLAINT

potentially un-monitored pollutants in violation of Effluent Limitation B(3) of the 1997 Permit and Effluent Limitation V(A) of the 2015 Permit.

181.   Each day since June 11, 2012, that Defendant has failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

182.   Defendant has been in violation of the BAT/BCT requirements every day since June 11, 2012.  Defendant continues to be in violation of the BAT/BCT requirements each day that they fail to develop and fully implement BAT/BCT at the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant.

## SECOND CAUSE OF ACTION
**Discharges of Contaminated Storm Water
in Violation of Permit Conditions and the Act
(Violations of 33 U.S.C. §§ 1311, 1342)**

183.   Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

184.   Discharge Prohibition A(2) of the 1997 Permit and Discharge Prohibition III(C) of the 2015 Permit prohibit storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance. Receiving Water Limitation C(1) of the 1997 Permit and Receiving Water Limitation VI(B) of the 2015 Permit prohibit storm water discharges to any surface or ground water that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the 2015 Permit prohibit storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

COMPLAINT

185.   Plaintiff is informed and believes, and thereupon alleges, that since at least October 11, 2012, Defendant has been discharging polluted storm water from the Los Angeles Plant in excess of the applicable water quality standards for zinc and copper in violation of Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the 2015 Permit.

186.   Plaintiff is informed and believes, and thereupon alleges, that since at least May 14, 2015, Defendant has been discharging polluted storm water from the East Washington Plant in excess of the applicable water quality standards for zinc and copper in violation of Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the 2015 Permit.

187.   Plaintiff is informed and believes, and thereupon alleges, that since at least January 26, 2015, Defendant has been discharging polluted storm water from the West Washington Plant in excess of the applicable water quality standards for pH, aluminum, zinc, and copper in violation of Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the 2015 Permit.

188.   Plaintiff is informed and believes, and thereupon alleges, that since at least October 11, 2012, Defendant has been discharging polluted storm water from the West Valley Plant in excess of the applicable water quality standards for aluminum, zinc, and copper in violation of Receiving Water Limitation C(2) of the 1997 Permit and Receiving Water Limitation VI(A) and Discharge Prohibition III(D) of the 2015 Permit

189.   During every rain event, storm water flows freely over exposed materials, waste products, and other accumulated pollutants at the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant, becoming

COMPLAINT

47

contaminated with pH, COD, aluminum, zinc, copper, and other potentially un-monitored pollutants at levels above applicable water quality standards.  The storm water from the Los Angeles Plant, East Washington Plant, and the West Washington Plant flows untreated into channels that empty into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay.  The storm water from the West Valley Plant then flows into channels that empty into Bull Creek, which flows into Reach 5 of the Los Angeles River, which flows into Reach 4 of the Los Angeles River, which flows into Reach 3 of the Los Angeles River, which flows into Reach 2 of the Los Angeles River, which flows into Reach 1 of the Los Angeles River and ultimately flows to the Pacific Ocean via the Los Angeles River Estuary and San Pedro Bay.

190.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are causing or contributing to the violation of the applicable water quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit.

191.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitation C(1) of the General Permit.

192.    Every day since at least June 11, 2012, that Defendant has discharged and continue to discharge polluted storm water from the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant, respectively, in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

## THIRD CAUSE OF ACTION
### Failure to Prepare, Implement, Review, and Update
### an Adequate Storm Water Pollution Prevention Plan
### (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

193.   Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

194.   The General Permit requires dischargers of storm water associated with industrial activity to develop and implement an adequate SWPPP no later than October 1, 1992.

195.   Defendant has failed to develop and implement an adequate SWPPP for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant, respectively.  Defendant's ongoing failure to develop and implement adequate SWPPPs for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant is evidenced by, *inter alia*, Defendant's failure to justify each minimum and advanced BMP not being implemented.

196.   Defendant has failed to update the SWPPPs for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant in response to the analytical results of the facilities' storm water monitoring.

197.   Each day since June 11, 2012, that Defendant has failed to develop, implement and update an adequate SWPPP for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant, respectively, is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

198.   Defendant has been in violation of the SWPPP requirements every day since June 11, 2012.  Defendant continues to be in violation of the SWPPP requirements each day that it fails to develop and fully implement an adequate SWPPP for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the

COMPLAINT

49

West Valley Plant, respectively.

### FOURTH CAUSE OF ACTION
**Failure to Develop and Implement an
Adequate Monitoring and Reporting Program
(Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

199.   Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

200.   The General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing a monitoring and reporting program (including, *inter alia*, sampling and analysis of discharges) no later than October 1, 1992.

201.   Defendant has failed to develop and implement an adequate monitoring and reporting program for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant, respectively.

202.   Defendant's ongoing failure to develop and implement an adequate monitoring and reporting program are evidenced by, *inter alia*, its failure to analyze storm water discharges at the facilities for numerous parameters including COD, iron, aluminum, and lead.

203.   Each day since at least June 11, 2012, that Defendant has failed to develop and implement an adequate monitoring and reporting program for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant, respectively, in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a). The absence of requisite monitoring and analytical results are ongoing and continuous violations of the Act.

COMPLAINT

## VII.   <u>RELIEF REQUESTED</u>

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   Declare Defendant to have violated and to be in violation of the Act as alleged herein;

b.   Enjoin Defendant from discharging polluted storm water from the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant, respectively, unless authorized by the 2015 Permit;

c.   Enjoin Defendant from further violating the substantive and procedural requirements of the 2015 Permit;

d.   Order Defendant to immediately implement storm water pollution control and treatment technologies and measures that are equivalent to BAT or BCT;

e.   Order Defendant to immediately implement storm water pollution control and treatment technologies and measures that prevent pollutants in the Los Angeles Plant's, East Washington Plant's, West Washington Plant's, and the West Valley Plant's storm water from contributing to violations of any water quality standards;

f.   Order Defendant to comply with the Permit's monitoring and reporting requirements, including ordering supplemental monitoring to compensate for past monitoring violations;

g.   Order Defendant to prepare SWPPPs for the Los Angeles Plant, East Washington Plant, West Washington Plant, and the West Valley Plant consistent with the Permit's requirements and implement procedures to regularly review and update the SWPPP;

h.   Order Defendant to provide Plaintiff with reports documenting the

COMPLAINT

51

quality and quantity of their discharges to waters of the United States and their efforts to comply with the Act and the Court's orders;

       i.  Order Defendant to pay civil penalties of up to $37,500 per day per violation for each violation of the Act since October 28, 2011, up to and including November 2, 2015, and up to $52,414 for violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 - 19.4;

       j.  Order Defendant to take appropriate actions to restore the quality of waters impaired or adversely affected by their activities;

       k.  Award Plaintiff's costs (including reasonable investigative, attorney, witness, compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

       l.  Award any such other and further relief as this Court may deem appropriate.

Dated: August 10, 2017            Respectfully submitted,

                 By:   */s/ Douglas J. Chermak*
                     Douglas J. Chermak
                     LOZEAU DRURY LLP
                     Attorneys for Los Angeles Waterkeeper

COMPLAINT

52