LOZEAU DRURY LLP
Michael R. Lozeau (SBN 142893)
Douglas J. Chermak (SBN 233382)
     E-mail: doug@lozeaudrury.com
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

*Plaintiff's Additional Counsel Listed On Next Page*

CASTELLÓN & FUNDERBURK LLP
William W. Funderburk Jr. (SBN 176244)
Anna Le May (SBN 258312)
     E-mail: wfunderburk@candffirm.com
811 Wilshire Blvd., Suite 1025
Los Angeles, CA 90017
Tel: (213) 623-7515
Fax: (213) 532-3984

Attorneys for Defendant
CITY FIBERS, INC.

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY FIBERS, INC., a corporation,<br><br>    Defendant. | Case No. 2:17-cv-05960-AB-AGR<br><br>~~[PROPOSED]~~ **CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

LOS ANGELES WATERKEEPER
Arthur Pugsley (State Bar No. 252200)
        E-mail:  arthur@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, CA 90401
Tel: (310) 394-6162
Fax: (310) 394-6178

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendant City Fibers, Inc. ("Defendant" or "City Fibers"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, Waterkeeper is dedicated to the preservation, protection, and defense of the inland and coastal surface and ground waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, City Fibers is the owner and operator of a recycling facility, located at 3033 East Washington Boulevard in Los Angeles, California, hereinafter referred to by the Settling Parties as the "East Washington Plant";

**WHEREAS**, City Fibers is the owner and operator of a recycling facility, located at 2211 East Washington Boulevard in Los Angeles, California, hereinafter referred to by the Settling Parties as the "West Washington Plant";

**WHEREAS**, City Fibers is the owner and operator of a recycling facility, located at 2500 S. Santa Fe Avenue in Los Angeles, California, hereinafter referred to by the Settling Parties as the "Los Angeles Plant";

**WHEREAS**, the Los Angeles Plant consists of two separate parcels known as "Los Angeles Plant #1" and "Los Angeles Plant #2";

**WHEREAS**, City Fibers is the owner and operator of a recycling facility, located at 16714 Schoenborn Street in North Hills, California, hereinafter referred to by the Settling Parties as the "West Valley Plant" (the East Washington Plant, West Washington Plant, Los Angeles Plant, and West Valley Plant are referred to collectively as the "Facilities");

**WHEREAS**, Waterkeeper has approximately 3,000 members who live and/or recreate in and around the Los Angeles area waterbodies receiving discharges from the Facilities, including the Los Angeles River, Bull Creek, and the Pacific Ocean;

**WHEREAS**, storm water discharges associated with industrial activity at the Facilities are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ and as subsequently amended by Water Quality Order No. 2014-0057-DWQ) (hereinafter the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*;

**WHEREAS**, on May 31, 2017, Waterkeeper served City Fibers, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice letter"), alleging

violations of the Act and the Permit at the Facilities;

**WHEREAS**, on August 10, 2017, Waterkeeper filed a complaint against City Fibers in the United States District Court, Central District Court of California, entitled *Los Angeles Waterkeeper v. City Fibers, Inc.* (Case No. 2:17-cv-05960-AB-AGR); alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Permit at the Facilities ("Complaint") based on the 60-Day Notice letter;

**WHEREAS**, Waterkeeper contends in its 60-Day Notice letter and Complaint that, among other things, City Fibers has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act;

**WHEREAS**, City Fibers denies all allegations set forth in the 60-Day Notice letter and Complaint relating to the Facilities;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of Waterkeeper's claims or any admission by City Fibers of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full Waterkeeper's allegations in the 60-Day Notice letter and Complaint through settlement and avoid the cost and uncertainties of further litigation;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations;

**WHEREAS**, the Settling Parties are entering into this Consent Decree in order

to reduce or prevent pollutants associated with industrial activities from discharging via storm water to the waters of the United States;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A);

2.    Venue is appropriate in the Central District of California pursuant to Section 505(c)(l) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations took place is located within this District;

3.    The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(l) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.    Plaintiff has standing to bring this action;

5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    <u>OBJECTIVES</u>

6.    It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by Waterkeeper in its Complaint.  In light of these objectives and as set forth fully below, Defendant agrees to comply with the

provisions of this Consent Decree and to comply with the requirements of the Permit and all applicable provisions of the Clean Water Act at the Facilities.

## II.     COMMITMENTS OF CITY FIBERS

7.     City Fibers shall continue to implement appropriate structural and non-structural BMPs, as required by the Permit, as described more fully below.

8.     **Maintenance of Implemented Storm Water Controls.**  City Fibers agrees that the Facilities shall maintain in good working order all storm water collection and management systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to, existing housekeeping measures.

9.     **Structural Improvements to Storm Water Management Measures at the East Washington Plant.**   Within thirty (30) days of the Effective Date, City Fibers shall implement the following structural improvements to the storm water management measures at the East Washington Plant:

a.     To filter storm water prior to discharge, City Fibers shall implement absorbent filter socks designed to treat metals and chemical oxygen demand at all industrial storm water discharge locations (DP1 and DP2 and DP3) prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.  The socks shall be adequately weighted to ensure maximum contact with storm water prior to discharge.

b.     Within fourteen (14) days of the first time that the filter socks described above are deployed, City Fibers shall e-mail Waterkeeper digital photographs confirming the placement of said filter socks.

10. **Improvements to Housekeeping Measures at East Washington Plant.**
Within thirty (30) days of the Effective Date, City Fibers shall implement the following improvements to housekeeping measures at the East Washington Plant:

a. City Fibers shall use a vacuum automated sweeper to clean paved industrial areas at the East Washington Plant at least monthly and prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

b. To the extent practicable, City Fibers shall store industrial materials in designated locations. City Fibers shall cover paper bales that are stored outside with tarps prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

c. To improve the efficacy of sweeping at the facility, City Fibers shall repave or perform spot repairs on needed areas of pavement within 90 days of the Effective Date. These areas are marked on Exhibit 1. Within fourteen (14) days of the repairs, City Fibers shall e-mail Waterkeeper digital photographs confirming said repairs.

11. **Evaluation of Infiltration at East Washington Plant.**

a. Within thirty (30) days of the Effective Date, City Fibers shall prepare and send Waterkeeper a report evaluating site conditions for infiltration potential of industrial storm water discharges at the East Washington Plant. At a minimum, infiltration shall be sized to fulfill the minimum design storm requirements contained in the Permit. The report will include soil conditions in the vicinity of the infiltration trench, a summary of the results of the infiltration testing, hydrology calculations for the General Permit design storm, recommended infiltration trench dimensions (including factors of safety), and conclusions regarding the feasibility of

infiltration.  Waterkeeper shall have thirty (30) days to provide comments on the report.   City Fibers shall incorporate Waterkeeper's comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving Waterkeeper's comments.  Any disputes about the capacity of the East Washington Plant for infiltration shall be subject to the dispute resolution provisions set forth in Paragraph 42 of this Consent Decree.

    b. If Waterkeeper and City Fibers agree that conditions are favorable for infiltration, City Fibers shall implement infiltration at the East Washington Plant within nine (9) months of the Effective Date.

   12. **Structural Improvements to Storm Water Management Measures at the West Washington Plant.**  City Fibers shall implement the following structural improvements to storm water management measures at the West Washington Plant:

    a. Within thirty (30) days of the Effective Date, to filter storm water prior to discharge, City Fibers shall implement absorbent filter socks designed to treat metals and chemical oxygen demand at all industrial storm water discharge locations (DP1, DP2, and DP3) prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.  The socks shall be adequately weighted to ensure maximum contact with storm water prior to discharge.

    b. Within thirty (30) days of the Effective Date, City Fibers shall continue to ensure that all non-storm water discharges that are not authorized non-storm water discharges pursuant to the Industrial General Permit are eliminated.

    c. Within ninety (90) days of the Effective Date, to improve the efficacy of sweeping at the facility, City Fibers shall repave or perform spot repairs on needed areas of pavement.  These areas are marked on Exhibit 1.

d.     Within fourteen (14) days of each of the above improvements, City Fibers shall e-mail Waterkeeper digital photographs confirming said improvements. With respect to the implementation of the filter socks in Paragraph 12(a), City Fibers shall send Waterkeeper photographs only after the first time that said filter socks are installed.

13.     **Improvements to Housekeeping Measures at the West Washington Plant.**  Within thirty (30) days of the Effective Date, City Fibers shall implement the following improvements to housekeeping measures at the West Washington Plant:

a.     City Fibers shall use a vacuum automated sweeper to clean the drainage areas for DP-1, DP-2, and DP-3 at the West Washington Plant at least monthly and prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

b.     To the extent practicable, City Fibers shall store industrial materials in designated locations.  City Fibers shall cover paper bales prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

c.     City Fibers shall refrain from conducting any industrial activities in the DP-4 drainage area.  This includes, but is not limited to, refraining from storing any industrial materials in this area.

14.     **Evaluation of Infiltration at West Washington Plant.**

a.     Within thirty (30) days of the Effective Date, City Fibers shall prepare and send Waterkeeper a report evaluating site conditions for infiltration potential of industrial storm water discharges at the West Washington Plant.  At a minimum, infiltration shall be sized to fulfill the minimum design storm requirements

contained in the Permit. The report will include soil conditions in the vicinity of the infiltration trench, a summary of the results of the infiltration testing, hydrology calculations for the General Permit design storm, recommended infiltration trench dimensions (including factors of safety), and conclusions regarding the feasibility of infiltration. Waterkeeper shall have thirty (30) days to provide comments on the report. City Fibers shall incorporate Waterkeeper's comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving Waterkeeper's comments. Any disputes about the capacity of the West Washington Plant for infiltration shall be subject to the dispute resolution provisions set forth in Paragraph 42 of this Consent Decree.

b. If Waterkeeper and City Fibers agree that conditions are favorable for infiltration, City Fibers shall implement infiltration at the West Washington Plant within six (6) months of the Effective Date.

15. **Structural Improvements to Storm Water Management Measures at the Los Angeles Plant #1.** City Fibers shall implement the following structural improvements to the storm water management measures at the Los Angeles Plant #1:

a. Within thirty (30) days of the Effective Date, to filter storm water prior to discharge, City Fibers shall implement absorbent filter socks designed to treat metals and chemical oxygen demand at all industrial storm water discharge locations prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches. The socks shall be adequately weighted to ensure maximum contact with storm water prior to discharge.

b. Within fourteen (14) days of the first time that the filter socks described above are deployed, City Fibers shall e-mail Waterkeeper digital

photographs confirming the placement of said filter socks.

16. **Improvements to Housekeeping Measures at the Los Angeles Plant #1.** Within thirty (30) days of the Effective Date, City Fibers shall implement the following improvements to housekeeping measures at the Los Angeles Plant #1:

a. City Fibers shall use a vacuum automated sweeper to clean the industrial drainage areas at the Los Angeles Plant #1 at least monthly and prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

b. City Fibers shall cover cardboard bales with tarps prior to forecast storm events with a greater than 50% change of precipitation over 0.1 inches.

c. City Fibers shall refrain from storing metal stockpiles in the outdoor area that is located in the DP-1 drainage area.

d. City Fibers shall take digital photographs of storm water sampling events at each outfall at the Los Angeles Plant #1 during the first sampling event of the 2018-2019 reporting year once the Consent Decree is in effect. These photos shall be provided to Waterkeeper within fourteen (14) days of the sampling date.

e. To the extent practicable, City Fibers shall store industrial materials in designated locations. City Fibers shall cover paper bales prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

17. **Evaluation of Infiltration at Los Angeles Plant #1.**

a. Within thirty (30) days of the Effective Date, City Fibers shall prepare and send Waterkeeper a report evaluating site conditions for infiltration potential of industrial storm water discharges at Los Angeles Plant #1. At a minimum, infiltration shall be sized to fulfill the minimum design storm requirements

contained in the Permit. The report will include soil conditions in the vicinity of the infiltration trench, a summary of the results of the infiltration testing, hydrology calculations for the General Permit design storm, recommended infiltration trench dimensions (including factors of safety), and conclusions regarding the feasibility of infiltration. Waterkeeper shall have thirty (30) days to provide comments on the report. City Fibers shall incorporate Waterkeeper's comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving Waterkeeper's comments. Any disputes about the capacity of the Los Angeles Plant #1 for infiltration shall be subject to the dispute resolution provisions set forth in Paragraph 42 of this Consent Decree.

        b.     If Waterkeeper and City Fibers agree that conditions are favorable for infiltration, City Fibers shall implement infiltration at the Los Angeles Plant #1 within six (6) months of the Effective Date.

      18.    **Structural Improvements to Storm Water Management Measures at the Los Angeles Plant #2.** City Fibers shall implement the following structural improvements to the storm water management measures at the Los Angeles Plant #2:

        a.     Within thirty (30) days of the Effective Date, to filter storm water prior to discharge, City Fibers shall implement absorbent filter socks designed to treat metals and chemical oxygen demand at all industrial storm water discharge locations prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches. The socks shall be adequately weighted to ensure maximum contact with storm water prior to discharge.

        b.     Within 90 days of the Effective Date, to improve the efficacy of sweeping at the facility, City Fibers shall repave or perform spot repairs on needed

areas of pavement.  These areas are marked on Exhibit 1.

   c. Within 30 days of the Effective Date, City Fibers shall install a speed bump or equivalent BMP along the south boundary of the facility and adjacent to E. 25th Street.

   d. Within fourteen (14) days of each of the above improvements, City Fibers shall e-mail Waterkeeper digital photographs confirming said improvements. With respect to the implementation of the filter socks in Paragraph 18(a), City Fibers shall send Waterkeeper photographs only after the first time that said filter socks are installed.

   19. **Improvements to Housekeeping Measures at the Los Angeles Plant #2.**  Within thirty (30) days of the Effective Date, City Fibers shall implement the following improvements to housekeeping measures at the Los Angeles Plant #2:

   a. City Fibers shall use a vacuum automated sweeper to clean the industrial drainage areas at the Los Angeles Plant #2 at least monthly and prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

   b. To the extent practicable, City Fibers shall store industrial materials in designated locations.  City Fibers shall cover paper bales that are stored outside with tarps prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

   20. **Evaluation of Infiltration at Los Angeles Plant #2.**

   a. Within thirty (30) days of the Effective Date, City Fibers shall prepare and send Waterkeeper a report evaluating site conditions for infiltration potential of industrial storm water discharges at Los Angeles Plant #2.  At a

minimum, infiltration shall be sized to fulfill the minimum design storm requirements contained in the Permit. The report will include soil conditions in the vicinity of the infiltration trench, a summary of the results of the infiltration testing, hydrology calculations for the General Permit design storm, recommended infiltration trench dimensions (including factors of safety), and conclusions regarding the feasibility of infiltration. Waterkeeper shall have thirty (30) days to provide comments on the report. City Fibers shall incorporate Waterkeeper's comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving Waterkeeper's comments. Any disputes about the capacity of the Los Angeles Plant #2 for infiltration shall be subject to the dispute resolution provisions set forth in Paragraph 42 of this Consent Decree.

b. If Waterkeeper and City Fibers agree that conditions are favorable for infiltration, City Fibers shall implement infiltration at the Los Angeles Plant #2 within twelve (12) months of the Effective Date.

21. **Structural Improvements to Storm Water Management Measures at the West Valley Plant.** City Fibers shall implement the following structural improvements to the storm water management measures at the West Valley Plant:

a. Within thirty (30) days of the Effective Date, to filter storm water prior to discharge, City Fibers shall implement absorbent filter socks designed to treat metals, chemical oxygen demand, and total suspended solids at the industrial storm water discharge location prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches. The socks shall be adequately weighted to ensure maximum contact with storm water prior to discharge.

22. **Improvements to Housekeeping Measures at the West Valley Plant.**

Within thirty (30) days of the Effective Date, City Fibers shall implement the following improvements to housekeeping measures at the West Valley Plant:

a.      City Fibers shall use a vacuum automated sweeper to clean the industrial drainage areas at the West Valley Plant at least monthly and prior to forecast storm events with a greater than 50% chance of precipitation over 0.1 inches.

b.      Within sixty (60) days of the Effective Date, City Fibers shall install a speed bump or equivalent at the north entrance of the facility to make sure storm water from the facility flows to the surface drain.

c.      Within 120 days of the Effective Date, to improve the efficacy of sweeping at the facility, City Fibers shall repave or perform spot repairs on needed areas of pavement.  These areas are marked on Exhibit 1.

d.      Within fourteen (14) days of each of the above improvements in Paragraphs 22(b) and (c), City Fibers shall e-mail Waterkeeper digital photographs confirming said improvements.

23.    **Evaluation of Infiltration at the West Valley Plant.**

a.      Within thirty (30) days of the Effective Date, City Fibers shall prepare and send Waterkeeper a report evaluating site conditions for infiltration potential along the southwest boundary of the site and adjacent to the railroad easement.  At a minimum, infiltration shall be sized to fulfill the minimum design storm requirements contained in the Permit.  The report will include soil conditions in the vicinity of the infiltration trench, a summary of the results of the infiltration testing, hydrology calculations for the General Permit design storm, recommended infiltration trench dimensions (including factors of safety), and conclusions regarding the feasibility of infiltration.  Waterkeeper shall have thirty (30) days to provide

comments on the report. City Fibers shall incorporate Waterkeeper's comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving Waterkeeper's comments. Any disputes about the capacity of the West Valley Plant for infiltration shall be subject to the dispute resolution provisions set forth in Paragraph 42 of this Consent Decree.

b. If Waterkeeper and City Fibers agree that conditions are favorable for infiltration, City Fibers shall implement infiltration at the West Valley Plant within three (3) months of the Effective Date.

24. **Employee Training.** Within sixty (60) days of the Effective Date, Defendant shall conduct training for employees who have responsibility at the Facilities for the implementation of any portion of the SWPPP, including the Monitoring Implementation Plan ("MIP"), or compliance with other terms of the Permit or Consent Decree. The training program shall include use of written training materials needed for effective implementation of the training program. Defendant shall also ensure that there are a sufficient number of employees assigned to implement the BMPs and conduct other compliance activities required by the Permit and this Consent Decree, and that these employees are properly trained to perform the required activities.

Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Defendant who is familiar with the requirements of this Consent Decree and the Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Permit, and the Defendant's Facilities' SWPPP and MIP, as appropriate to the particular employee's job descriptions. Any new employee at Defendant's Facilities who is responsible for

implementation of any portion of the SWPPP, the MIP, or compliance with other terms of the Permit or Consent Decree shall receive training within sixty (60) days after being hired, or before being responsible for compliance with the terms of the Permit or Consent Decree.

Defendant shall maintain training records to document compliance with Section III.E of this Consent Decree, and shall make these records available for Plaintiff's review at the Defendant's Facilities. The Training Program shall be specified in the SWPPP and Defendant shall modify the SWPPP as necessary to reflect the training program required by this Consent Decree.

The training program shall cover the following topics:

a. <u>Non-Storm Water Discharge Training</u>. The training program shall include training of all applicable employees on the Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper practices that may produce non-storm water discharges, and how to detect and prevent them.

b. <u>BMP Training</u>. The training program shall include training of all applicable employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent or reduce the exposure of potential pollutants to storm water and to ensure the proper implementation of BMPs, including treatment systems (if applicable), at the Facilities.

c. <u>Sampling Training</u>. The training program shall include training of an adequate number of employees to ensure the collection of storm water samples as required by this Consent Decree and/or the Permit, and include training on the proper sampling protocols and chain of custody requirements to ensure storm water samples are properly collected, stored, and

submitted to a certified laboratory.

d. <u>Visual Observation Training</u>. The training program shall include training of all individuals performing visual observations at the Facilities pursuant to this Consent Decree and/or the Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Permit.

25. **Storm Water Sampling.** The following storm water monitoring procedures shall be implemented at the Facilities:

a. <u>Frequency</u>. During the term of this Consent Decree, Defendant shall collect samples from each industrial discharge location at the Facilities in the event that discharges occur at the Facilities during scheduled facility operating hours from at least four (4) qualified storm events pursuant to the Permit. A "qualified storm event" is a storm event that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1 of a reporting year, Defendant has collected samples from two (2) or fewer qualified storm events, Defendant shall sample at least two (2) non-qualified storm events during operating hours. To satisfy the requirements of this Consent Decree, samples collected during non-qualified storm events must have been collected during storm events that occurred at least three working (3) days apart. Samples from non-qualified storm events must be collected within the first four (4) hours after rain begins or the particular facility begins operation in the event the rain begins prior to operating hours.

b. <u>Contained or Stored Storm Water</u>. To the extent industrial storm

water is stored or contained at the Defendant's Facilities, Defendant shall sample the stored or contained water before it is released, even if the release is not during operating hours.

c. <u>Parameters</u>. Defendant shall analyze each storm water sample collected for the contaminants set forth in the Table 1.

d. <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree, except for pH which is measured in the field.

e. <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

f. <u>Hold Time</u>. All samples shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements, such as pH, Defendant shall follow the requirements set forth in the Permit.

g. <u>Concentrations</u>. Defendant shall request that all sample results for metals be reported by the laboratory as necessary to provide for comparison to limits in Table 1.

h. <u>Reporting</u>. Defendant shall provide Waterkeeper with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all storm water samples collected within ten (10) business days of receiving the results.

26. **Amendment of SWPPPs.** Within thirty (30) days of the Effective Date,

City Fibers shall amend the Facilities' SWPPPs to incorporate all changes, improvements, and best management practices set forth in or resulting from this Consent Decree. City Fibers shall ensure that all maps, tables, and text comply with the requirements of the Permit.

City Fibers shall revise the SWPPPs to describe all structural and non-structural BMPs, details of the measures to be installed, and discuss why such BMPs should be effective in addressing the pollutant sources at the Facilities. A copy of the amended SWPPPs shall be provided to Waterkeeper within ten (10) business days of completion. Waterkeeper shall provide comments, if any to City Fibers within thirty (30) days of receipt of the amended SWPPPs. City Fibers shall incorporate Waterkeeper's comments into the SWPPPs or shall justify in writing why any comment is not incorporated within thirty (30) calendar days of receiving Waterkeeper's comments. Any disputes over the adequacy of the amended SWPPPs shall be resolved pursuant to the Dispute Resolution provision in Paragraph 42.

27. **Additional and Ongoing Revisions to SWPPPs.** City Fibers shall revise the SWPPPs, including the MIPs, pursuant to the Permit, including if there are any changes in City Fibers' Facilities' operations that may possibly affect the quality of industrial storm water discharges, including but not limited to changes to industrial storm water discharge point(s)/sample location(s) or changes or additions to the BMPs resulting from an Action Plan, or the reduction of discharge points. City Fibers shall submit any revised SWPPP to Waterkeeper for review and comment if a significant revision has been made e.g., change or reduction of industrial storm water discharge

points, implementation of advanced BMPs, etc. consistent with the terms and timelines of Paragraph 26 above.

28. **Document Provision.** During the term of this Consent Decree, City Fibers shall notify Waterkeeper within five (5) day after it uploads to SMARTS any document related to storm water quality at the Defendant's Facilities. City Fibers shall copy Waterkeeper on its submittal of any document and/or written communication that is not uploaded via SMARTS that is related to storm water quality at the Facilities to any state or local agency or municipality. Any correspondence related to storm water quality received by City Fibers from any state or local agency or municipality shall be provided to Waterkeeper within ten (10) business days of receipt by City Fibers.

29. **Annual Site Inspections.** Up to three Waterkeeper representatives or consultants (including an attorney), may conduct one inspection ("Site Inspection") at each of the Facilities each year that this Consent Decree is in effect, except in the event there is a storm water discharge from the Facilities that triggers the need to prepare a Table 1 Action Plan, then Waterkeeper shall be permitted to perform one (1) additional Site Inspection at the Facility for which the Action Plan was submitted pursuant to Paragraph 31. Site Inspections shall occur during normal business hours and Waterkeeper shall provide Defendant with as much notice as possible, but at least twenty-four (24) hours notice prior to a Site Inspection during wet weather (Wet Weather inspection), and seventy-two (72) hours notice prior to a Site Inspection during dry weather. Notice will be provided by telephone and electronic mail.

During the Site Inspection, Defendant shall allow Waterkeeper and/or its representatives access to the Facilities' SWPPPs, MIP, storm water monitoring records, and non-privileged reports and data related to storm water monitoring at the Facilities. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facilities' designated industrial discharge points referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to Waterkeeper. Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection pursuant to this paragraph. If Waterkeeper takes photographs and/or video recording, Waterkeeper shall provide Defendant with the photographs and/or video within fourteen (14) calendar days after the Site Inspection. Waterkeeper agrees that all individuals who will participate in a Site Inspection will execute a waiver and release prior to the Site Inspection.

## III. MEET AND CONFER ABOUT SAMPLING RESULTS

30. **Action Plan Regarding Exceedance of Numeric Limitations**.

a. If a particular Facility's storm water sampling results during the 2018-2019, 2019-2020, and 2020-2021 reporting years show three or more exceedances of numeric limitations in Table 1 of the same constituent in a single reporting year, City Fibers agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs, evaluating and/or implementing advanced treatment systems (if applicable

pursuant to provision 30.b.iii) and implementing additional BMPs aimed at reducing levels observed in storm water samples.

**Table 1. Numeric Limitations.**

| Contaminant | Numeric Limit |
|---|---|
| Total Suspended Solids | 100 mg/L |
| pH | 6.0 – 9.0 s.u. |
| Oil and Grease | 15 mg/L |
| Total Recoverable Iron | 1.0 mg/L |
| Total Recoverable Zinc | 0.20 mg/L |
| Total Recoverable Copper | 0.0253 mg/L |
| Total Recoverable Lead | 0.182 mg/L |
| Total Recoverable Aluminum | 0.75 mg/L |
| Chemical Oxygen Demand | 120 mg/L |

   b.  In furtherance of that objective, City Fibers shall prepare a written statement ("Action Plan") that includes the following:

     i. A discussion of any exceedance or exceedances of the numeric limitations;

     ii. An explanation of the possible cause(s) and/or source(s) of any exceedance; and

     iii. Identification of responsive BMPs that will be taken to improve the particular facility's storm water management practices to further reduce the possibility of future exceedance(s). This

evaluation must consider advanced media filtration and treatment that would be sized at a minimum for the "Design Storm Standards for Treatment Control BMPs" in Section X.H.6 of the General Permit. However, the consideration of advanced media filtration and treatment shall not be required to the extent a particular plant is still undergoing and/or implementing infiltration or has implemented infiltration during the Reporting Year that triggered the Action Plan, pursuant to Paragraphs 11, 14, 17, 20, and/or 23 of this Consent Decree.

c. Should an Action Plan be required, such Action Plan shall be e-mailed to Waterkeeper no later than July 30th during each year of this Consent Decree.

d. The new BMPs pursuant to the Action Plan shall be implemented by the October 1 subsequent to the due date of each respective Action Plan.

31. **Action Plan Review.** Upon receipt of the Action Plan, Waterkeeper shall have thirty (30) days to provide City Fibers with comments. Within thirty (30) days of receipt of Waterkeeper's Action Plan comments, City Fibers shall revise its SWPPP and/or Monitoring Implementation Plan to reflect the changes and /or additional BMPs as set forth in the Action Plan or shall justify in writing why any comment is not incorporated. If requested by Waterkeeper within thirty (30) days of receipt of such Action Plan, Waterkeeper and City Fibers shall meet and confer to

discuss the contents of the Action Plan and the adequacy of proposed BMPs to improve the quality of the Facilities' storm water to levels at or below the numeric limitations. If requested by Waterkeeper within thirty (30) days of receipt of such Action Plan, Waterkeeper and City Fibers shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Action Plan to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facilities' storm water to levels at or below the numeric limitations. If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Action Plan, the Settling Parties may agree to seek a settlement conference with the Magistrate Judge assigned to this action pursuant to Paragraph 42 below. If the Settling Parties fail to reach an agreement on additional measures, Waterkeeper may bring a motion before the District Court consistent with Paragraph 42 below. The Parties may agree in writing to extend any dates contained in this paragraph in order to further this Paragraph's meet and confer procedure.

32. Any concurrence or failure to object by Waterkeeper with regard to the reasonableness of any additional measures required by this Consent Decree or implemented by City Fibers shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facilities' storm water discharges into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the Permit.

///

## IV. MITIGATION, REIMBURSEMENT OF LITIGATION FEES AND COSTS, OVERSIGHT, AND STIPULATED PAYMENTS

33. **Mitigation Payment**.  In recognition of the good faith efforts by City Fibers to comply with all aspects of the Permit and the Clean Water Act at the Facilities, and in lieu of payment by City Fibers of any penalties, which may have been assessed in this action if it had been adjudicated adverse to City Fibers, the Parties agree that City Fibers will pay the sum of fifty thousand dollars ($50,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects in the Southern California Bight relating to water quality improvements.  Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little.  Payment shall be made by City Fibers to the Rose Foundation within fifteen (15) calendar days of the Effective Date.  City Fibers shall copy Waterkeeper with any correspondence and a copy of the check sent to the Rose Foundation.  The Rose Foundation shall provide notice to the Parties within thirty (30) days of when the funds are disbursed by the Rose Foundation, setting forth the recipient and purpose of the funds.

34. **Reimbursement of Fees and Costs.**  City Fibers shall reimburse Waterkeeper in the amount of one hundred and thirty five thousand dollars ($135,000) to help defray Waterkeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facilities related to this Consent Decree, bringing these matters to City Fibers'

attention, and negotiating a resolution of this action in the public interest.  City Fibers shall tender said payment, payable to "Los Angeles Waterkeeper", within fifteen (15) days of the Effective Date.

35. **Compliance Monitoring Funds.**  As reimbursement for Waterkeeper's future fees and costs that will be incurred in order for Waterkeeper to monitor City Fibers' compliance with this Consent Decree and to effectively meet and confer and evaluate storm water monitoring results for the Facilities, City Fibers agrees to pay Waterkeeper the amount of twenty thousand dollars ($20,000) for its costs to be incurred in overseeing the implementation of this Consent Decree.  City Fibers shall make payment to Waterkeeper within forty-five (45) calendar days of the Effective Date.  Payment by City Fibers to Waterkeeper shall be made in the form of a single check payable to "Los Angeles Waterkeeper."

36. **Stipulated Payment for Missed Deadlines.** City Fibers shall make a stipulated payment of Six Hundred Dollars ($600.00) for each missed deadline included in this Consent Decree, not excused by Force Majeure.  Payments for a missed deadline shall be used to fund environmental project activities that will benefit the Southern California Bight.  The Stipulated Payment shall be paid to the Rose Foundation, and mailed via certified mail or overnight delivery to: Rose Foundation, c/o Tim Little, 201 4th Street, Suite 102, Oakland, CA 94607.  City Fibers shall provide Waterkeeper with a copy of such payment at the time it is made.  City Fibers shall make the Stipulated Payment within thirty (30) days of a missed deadline, unless Waterkeeper agreed in writing to an extension of that deadline.  City Fibers shall

provide Waterkeeper with a copy of such payment at the time it is made.

## V.   **COMMITMENTS OF WATERKEEPER**

37.   **Submission of Consent Decree to DOJ.**   Within three (3) business days of receiving all of the Parties' signatures to this Consent Decree, Waterkeeper shall submit this Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by the DOJ.

## VI.   **WAIVER, RELEASES AND COVENANTS NOT TO SUE**

38.   In consideration of the above, and except as otherwise provided by this Consent Decree, the Parties hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors, agents, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the Parties have against each other arising from Waterkeeper's allegations and claims as set forth in the 60-Day Notice Letter and/or Complaint, or which could have been claimed for matters asserted in the 60-Day Notice Letter and/or Complaint, for alleged CWA violations, including alleged storm water pollution discharges, at the

Facilities up to and including the Termination Date of this Consent Decree.

39.     The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint for alleged CWA violations, including alleged storm water pollution discharges at the Facilities up to and including the Termination Date of this Consent Decree.

40.     **No Admission.**  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and City Fibers expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by City Fibers of any fact, finding, conclusion, issue of law, or violation of law. However, this Paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

41.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial

or administrative body on any matter relating to City Fibers.

## VII.  BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

42.  **Dispute Resolution.**  If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action.  The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph.  In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court.  In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party.  The relevant provisions of the then-applicable Clean Water Act, and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law interpreting such provisions shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court.  The District Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof.

43.  **Force Majeure**.  City Fibers will notify Waterkeeper if timely

implementation of City Fibers' respective duties under this Consent Decree becomes impossible due to circumstances beyond the control of City Fibers or its agents, and which could not have been reasonably foreseen and prevented by the respective City Fibers' exercise of due diligence. Any delays due to the City Fibers' respective failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree will not, in any event, be considered to be circumstances beyond City Fibers' control. Financial inability will not, in any event, be considered to be circumstances beyond the City Fibers' control.

a. If City Fibers claims impossibility, it will notify Waterkeeper in writing within twenty-one (21) days of the date that City Fibers discovers the event or circumstance that caused or would cause non-performance with the terms of this Consent Decree. The notice must describe the reason for the non-performance and specifically refer to this section of this Consent Decree. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by City Fibers to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. City Fibers will adopt all reasonable measures to avoid and minimize such non-performance.

b. The Settling Parties will meet and confer in good faith concerning the non-performance and, if the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of City Fibers, due to circumstances beyond the control of City Fibers that could not have been reasonably foreseen and

prevented by the exercise of due diligence by City Fibers, new performance deadlines will be established.

   c. If Waterkeeper disagrees with City Fibers' notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party may invoke the dispute resolution process described in Paragraph 42 of this Consent Decree. In such proceeding, City Fibers will bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

   d. If applicable, City Fibers shall diligently file and pursue required applications for permits, consents, and approvals for the structural BMPs described in this Consent Decree, and shall diligently pursue the procurement of contractors, labor and materials to complete all such BMPs by the deadlines set forth herein, and shall use reasonable good faith efforts to meet these deadlines. City Fibers shall be excused from meeting the deadlines in this Consent Decree for a specific BMP if circumstances beyond the reasonable control of Defendant in obtaining any required governmental permits, consents, or approvals due to the permitting agency's actions or inactions or delays associated with the fabrication and/or construction of materials prevent the attainment of deadline for a specific BMP. Such delays may be excused if all of the following requirements are met: (1) City Fibers has notified Waterkeeper via email within ten (10) days of first learning about the anticipated delay; and (2) City Fibers continues to exercise due diligence and reasonable good faith efforts in

pursuing the permitting and implementation of the BMP in question and proposes a reasonable revised deadline. Any excused delay shall not excuse Defendant from implementing its other, unexcused obligations under this Consent Decree.

## VIII. <u>MISCELLANEOUS PROVISIONS</u>

44. **Effective Date.** The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

45. **Term of Consent Decree.** This Consent Decree shall terminate on December 21, 2021, or through the conclusion of any proceeding to enforce this Consent Decree initiated prior to December 21, 2021, or until the completion of any payment or affirmative duty required by this Consent Decree, whichever is the later occurrence. In addition, this Consent Decree may be terminated with respect to one or more of Defendant's Facilities upon the following:

a. The cessation of industrial operations by Defendant at a particular facility, as the case may be, and acceptance and approval of a corresponding Notice of Termination of Coverage under the Storm Water Permit by the Regional Board.

b. Beginning with the 2018-2019 Reporting Year, monitoring data spanning at least two Reporting Years from five (5) consecutive storm water samples from each Reporting Year collected from the particular facility's discharge locations, as the case may be, demonstrate compliance with the Table 1 Numeric Limits.

c. If a particular facility meets the requirements for Dischargers Claiming "No Discharge" through the Notice of Non-Applicability ("NONA") and obtains approval of a Notice of Termination of Coverage under the Storm Water Permit by the Regional Board.

i. In order for this clause to apply, prior to submission of a NONA, City Fibers shall prepare a No Discharge Technical Report that complies with the requirements of the General Permit to support the Facility's "No Discharge" eligibility. The No Discharge Technical Report shall be prepared and signed by a California licensed professional engineer.

ii. Upon completion of the No Discharge Technical Report and prior to submitting it to the Regional Board, City Fibers shall submit the No Discharge Technical Report to Waterkeeper. and underlying data and supporting documentation to Waterkeeper for review and comment. Waterkeeper shall provide comments to City Fibers within fifteen (15) days of receipt. Defendant shall incorporate Waterkeeper's comments, or justify in writing why any comment(s) are not incorporated, within fifteen (15) days of receipt. Within seven (7) days of receipt of City Fibers' response to Waterkeeper's comments, Waterkeeeeper shall notify City Fibers of any remaining disputes with City Fibers' No Discharge Technical Report. The Settling Parties agree to work in good faith with respect to resolving any disputes with respect to the No Discharge Technical Report, and agree that the existence of any ongoing dispute shall not obligate City Fibers to delay its NOT submittal to the Regional Board.

iii. After submitting its response to Waterkeeper's comments on the No Discharge Technical Report, City Fibers shall submit the No Discharge Technical Report and the application for NOT to the Regional Board for approval, and shall provide a copy of those final submittals to Waterkeeper.

46. **Execution in Counterparts.**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

47. **Facsimile Signatures.**  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

48. **Construction.**  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

49. **Authority to Sign.**  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

50. **Integrated Consent Decree.**  All Consent Decrees, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

51. **Severability.**  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable

provisions shall not be adversely affected.

52. **Choice of Law.** This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

53. **Full Settlement.** This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

54. **Negotiated Consent Decree.** The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

55. **Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

56. **Assignment.** Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

57. **Mailing of Documents to Waterkeeper/Notices/Correspondence.** Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Waterkeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses

listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Los Angeles Waterkeeper:

Arthur Pugsley
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
E-mail: arthur@lawaterkeeper.org

With copies sent to:

Douglas Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
E-mail:  doug@lozeaudrury.com

Unless requested otherwise by City Fibers, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to City Fibers pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

City Fibers:

Kipp Jones
Brett Jones
Todd Jones
2500 S. Santa Fe Avenue
Los Angeles, California 90058
kipp@cityfibers.com

brett@cityfibers.com
todd@cityfibers.com

With copies sent to:

William W. Funderburk
Castellon & Funderburk LLP
811 Wilshire Blvd., Suite 1025
Los Angeles, CA 90017
E-mail: wfunderburk@candffirm.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

58.     If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

59.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

LOS ANGELES WATERKEEPER

Date: October 25 , 2018

_____

Bruce Reznik
Executive Director
Los Angeles Waterkeeper


CITY FIBERS, INC.

Date: _____ , 2018


_____

Kipp Jones
CEO City Fibers


Approved as to form:

LOZEAU DRURY LLP

Date: 2 Nov. , 2018

_____

Douglas Chermak
Attorneys for Los Angeles Waterkeeper


LOS ANGELES WATERKEEPER

Date: Oct. 24 , 2018

_____

Arthur Pugsley
Attorneys for Los Angeles Waterkeeper

LOS ANGELES WATERKEEPER

Date: _____, 2018

_____
Bruce Reznik
Executive Director
Los Angeles Waterkeeper


CITY FIBERS, INC.

Date: Nov 1 , 2018

_____
Kipp Jones
CEO City Fibers


Approved as to form:

LOZEAU DRURY LLP

Date: _____, 2018

_____
Douglas Chermak
Attorneys for Los Angeles Waterkeeper


LOS ANGELES WATERKEEPER

Date: _____, 2018

_____
Arthur Pugsley
Attorneys for Los Angeles Waterkeeper

CASTELLÓN & FUNDERBURK LLP

Date: October 31, 2018

William W. Funderburk
Attorney for City Fibers, Inc.

**IT IS SO ORDERED.**

Date: 1/2/2019

Honorable André Birotte Jr.
United States District Judge
Central District of California

# EXHIBIT 1



**NOTES:**
1. Drainage Plan is not to scale.
2. All surfaces on-site are paved and impervious unless otherwise noted.
3. Site perimeter is secure, no discharge unless noted.
4. Maintenance activities occur outside.
5. Municipal storm drain inlet and receiving water body shown separately.
6. Baler #1 is used for paper, newspaper, and cardboard. Baler #2 is used for plastic, aluminum, and trash.

**LEGEND**
- Facility Boundary
- Building
- Surface Flow Direction
- Steel Push Wall
- Discharge Point
- On-site surface drain/ Sump with Pump
- Landscaping
- Filter Sock
- Speed Bump
- Rail Spur
- Underground Pipe

**CITY FIBERS**
**WEST VALLEY**
**DRAINAGE PLAN**
16714 Schoenborn St
North Hills, CA 91343

| Action | Date |
|--------|------|
| Created | 07/09/15 |
| Updated | 8/8/2017 |



Harriet Street

NEIGHBOR
(No potential for run-off or run-off)

NEIGHBOR
(No potential for run-off or run-off)

BALE STORAGE

Shipping/Receiving

MISC EQUIPMENT STORAGE

SORTING LINE

SORTING LINE

STAR SCREEN
(SORTING LINE)

PAPER SHREDDER

MAINTENANCE BUILDING

COMMERCIAL TIPPING BUILDING

BALE STORAGE

BALER

BALE STORAGE

Shipping/Receiving

CULVERT

Scale

Bale

Scale

BIN STORAGE

BALE STORAGE

BALE STORAGE

LOADING DOCK

TRAILER LOADING

E. 25th Street

**LEGEND**

Facility Boundary
Building with Cover
Surface Flow Direction
Discharge Point
Municipal storm drain Inlet
Hazardous Material Storage
Filter Sock

CITY FIBERS, INC.

CITY FIBERS LA PLANT #2
Site Map
2500 S. Santa Fe Ave, Los Angeles, CA

Revised: 8/8/2017

07/07/2015

NOTES:
1  Drainage Plan is not to engineered to scale
2  An internal on-site a source separated upon arrival
3  All surfaces on-site are paved and impervious
4  Site perimeter secured with sheet metal fence, cinder block or steel wall. No possibility for run-on or run-off except where shown
5  All maintenance activities occur under roof
6  Run-off from roofs flow into the larger drainage pattern



**LEGEND**

- ·—·—· Facility Boundary
- → Surface Flow Direction
- → Roof Runoff
- ⊙ Discharge Point
- Pervious Area
- Concrete Swale
- Dead-end Surface Drain
- ◗ Filter Sock
- ▨ No Exposure Certification (NEC) Area

**NOTES:**
1. Drainage Plan is not to engineered to scale
2. All material on-site is source-separated upon arrival
3. All surfaces on-site are paved with concrete unless otherwise noted
4. Site perimeter secured with sheet metal fence, cinder block or steel wall. No possibility for run-on or run-off except where shown
5. Maintenance occurs onsite 1-2 times per week. Maintenance activities, including welding, occur under roof
6. Misc. include temporary storage of salvaged materials
7. Run-off from roofs flow into the larger drainage pattern

CITY FIBERS, INC.

GSI ENVIRONMENTAL

| CITY FIBERS EAST WASHINGTON FACILITY DRAINAGE PLAN | Revised 1/8/2018 |
| 3033 E. Washington Blvd., Los Angeles, CA | Created 06/10/2015 |

Rail Spur

Discharge from Drainage Area of NEC

Ramp

Loading Dock (under overhang)

Paper/Cardboard Bale Storage

**Bale Storage Building**

Paper/Cardboard Bale Storage

Loading Dock (under overhang)

Baler

Paper/Cardboard Bale Storage

Material Bunkers

HazMat Storage Locker

Vacant Building

Truck Scale

Truck Scale

Office & Scale House

Empty Bin Storage

Parking

EAST WASHINGTON BLVD

Ramp

Loading Dock (under overhang)

MISC. Storage

Material Receiving Canopy

Bale Storage

Maintenance Building

Maintenance

Commercial Bin Storage

Empty Bin Storage

Propane

Metal Receiving Stockpile/ Buy-Back (outdoors)

Metal Loading (outdoors)

MISC. Storage

MISC. Storage



CITY FIBERS WEST WASHINGTON
FACILITY DRAINAGE PLAN
2211 E. Washington Blvd., Los Angeles, CA

Revised 8/8/2017

06/16/2015

**LEGEND**

- Facility Boundary
- Storm Water Surface Flow Direction
- Sampling Location From Associated Drainage Area
- Concrete Paving
- Dead-end Sump (39 in. x 39 in. x 10 ft.)
- 120-gal Propane Tank
- Bollards
- No Exposure Certification (NEC) Area
- Filter Sock

**NOTES:**
1. Drainage Plan is not to engineered to scale
2. All material on site is source-separated upon arrival
3. All surfaces on-site are paved with asphalt unless otherwise noted
4. Net surfaces required with sheet metal fence, cinder block or steel wall. No possibility for run-on or run-off except where shown
5. All material removed and stored outside unless otherwise shown
6. Welding activities occur in the repair area. Welding has been named to generate particulate

E. Washington Blvd.

E. 16th Street

Scale House
Truck Scales
Truck Scales
Truck Scale

Buy-Back Center/
Pre-process
White Goods Canopy

Bin Storage

Ready to Ship
White Goods

Ready to Ship Materials Area

Paper Punch-Out
Bin Storage
(covered)

Metal Receiving Stockpile

Cardboard Bale
Storage

Cardboard
Receiving

Cardboard
Receiving

Metal Loading Area

Conveyor Belt

Baler

Diesel Tank

Equipment Storage

Porta Toilet
(Covered/elevated)

Material Storage Building

Wire Stripper

Car Batteries
(on pallets)

Brass & Copper
Storage Area

Material Bale Storage
(bean, cardboard, Al)

Material Bale Storage
(wires, radiators, Al)

Back-up Baler Storage

Metal
Dismantling
Canopy

Employee
Break Room

Roll-off/Equipment
Repair Area

Hydraulic Oil
Drum Storage
(sealed & elevated)

No truck traffic
Locked sheet metal gate

Discharge from Drainage Area of NEC

FIBERS, INC.



# CITY FIBERS
## LA PLANT #1
### Site Map

2500 S.
Santa Fe Ave.
Los Angeles, CA

CITY FIBERS, INC.

| Action | Date |
|--------|------|
| Created | 07/07/15 |
| Revised | 8/8/17 |

**LEGEND**

- Facility Boundary
- Building with Cover
- Surface Flow Direction
- Steel Push Wall
- Discharge Point
- Municipal storm drain inlet
- Hazardous Material Storage
- Rail Spur
- Filter Sock

**NOTES:**
1. Drainage Plan is not to scale.
2. All surfaces on-site are paved with concrete unless otherwise noted.
3. Site perimeter is secure, no discharge unless noted.
4. Some maintenance activities occur outside.

Propane Fueling

Scale House

Truck Scale

Commercial Bin Storage

Material Receiving (outdoors)

Material Receiving (indoors)

Shipping/Receiving

Commercial Bin Storage

Empty Bin Storage

Sorted Material Storage Bunkers

Bale Storage

Employee Parking

E 25th St.

Baler

Shredder

Bale Storage

Loading Dock

Bale Storage

Warehouse

Shipping/Receiving

Maintenance Shop

Bale Storage Building

Bale Storage

Office Building

Sidewalk

E 24th St.

Santa Fe Ave